# FLORIDA POWER & LIGHT CO. *v.* LORION, DBA CENTER FOR NUCLEAR RESPONSIBILITY, ET AL.

No. 83–703.   Argued October 29, 1984—Decided March 20, 1985*

_____

*Together with No. 83–1031, *United States Nuclear Regulatory Commission et al.* v. *Lorion, dba Center for Nuclear Responsibility, et al.*, also on certiorari to the same court.

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, MARSHALL, BLACKMUN, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 746.

*Charles A. Rothfeld* argued the cause *pro hac vice* for petitioners in No. 83–1031. On the briefs were *Solicitor General Lee, Deputy Solicitor General Claiborne, John H. Garvey, Dirk D. Snel, John A. Bryson, Herzel H. E. Plaine,* and *E. Leo Slaggie. Harold F. Reis* argued the cause for petitioner in No. 83–703. With him on the briefs was *Norman A. Coll.*

*Martin H. Hodder* argued the cause for respondent Lorion. With him on the brief was *Terence J. Anderson.*†

---

†*Joseph B. Knotts, Jr.,* and *Linda L. Hodge* filed a brief for the Atomic Industrial Forum, Inc., as *amicus curiae* urging reversal.

JUSTICE BRENNAN delivered the opinion of the Court.

These cases require us to decide whether 28 U. S. C. § 2342(4) and 42 U. S. C. § 2239 grant the federal courts of appeals exclusive subject-matter jurisdiction initially to review decisions of the Nuclear Regulatory Commission to deny citizen petitions requesting that the Commission "institute a proceeding . . . to modify, suspend or revoke a license . . . ." 10 CFR § 2.206(a) (1984).

I

Respondent Joette Lorion, on behalf of the Center for Nuclear Responsibility, wrote the Nuclear Regulatory Commission on September 11, 1981, to express fears about potential safety threats at petitioner Florida Power and Light Company's Turkey Point nuclear reactor near her home outside Miami, Florida. Her detailed letter urged the Commission to suspend Turkey Point's operating license[1] and specified several reasons for such action.[2] The Commission treated Lorion's letter as a citizen petition for enforcement action pursuant to the authority of § 2.206 of the Commission's rules of practice. This rule provides:

> "Any person may file a request for the Director of Nuclear Reactor Regulation . . . to institute a proceeding pursuant to [10 CFR] § 2.202 to modify, suspend or revoke a license, or for such other action as may be proper. . . . The requests shall specify the action requested

---

[1] Sections 181–189 of the Atomic Energy Act of 1954, 42 U. S. C. §§ 2231–2239, set forth a detailed and comprehensive licensing scheme to govern private construction and operation of nuclear power facilities.

[2] Lorion claimed that (1) the reactor's steam generator tubes had not been inspected; (2) the plugging and consequent deactivation of as many as 25% of the steam generator tubes overburdened the remaining functional tubes and therefore posed a risk of leakage in those tubes; and (3) the steel reactor pressure vessel had become dangerously brittle and therefore might not withstand the thermal shock that would accompany any emergency cooldown of the reactor core. App. 6–8.

and set forth the facts that constitute the basis for the request." 10 CFR § 2.206(a) (1984).

This rule also requires the Director of Nuclear Reactor Regulation, within a reasonable time after receiving such a request, either to institute the requested proceeding,[3] or to provide a written explanation of the decision to deny the request. § 2.206(b). The Commission interprets § 2.206 as requiring issuance of an order to show cause when a citizen petition raises "substantial health or safety issues." *Consolidated Edison Co. of New York,* 2 N. R. C. 173, 174 (1975).

In these cases, the Director decided not to take the action Lorion had requested. His written explanation—based on a 547-page record compiled primarily from existing Commission materials—responded to each of Lorion's points.[4] See *In re Florida Power & Light Co. (Turkey Point Plant, Unit 4),* 14 N. R. C. 1078 (1981). Lorion unsuccessfully sought review by the Commission of the Director's denial of the § 2.206 request and then petitioned the Court of Appeals for the District of Columbia Circuit for review. Before that court, Lorion argued that the Director's denial of the § 2.206 request was arbitrary and capricious pursuant to the Administrative Procedure Act (APA), 5 U. S. C. § 706(2)(A).

---

[3] The Director of Nuclear Reactor Regulation institutes the requested proceeding by serving an order to show cause upon the licensee. According to Commission regulations this order must inform the licensee of, *inter alia,* the allegations against it, its right to respond, and its right to a hearing. 10 CFR § 2.202 (1984).

[4] The claimed lack of inspection was found to have been mooted by a Commission staff inspection of the steam generator tubes on October 19, 1981, approximately one month after Lorion's letter. The risk of leaking steam generator tubes was found not to pose a serious safety hazard. In any event, the chances of such leakage were found to be remote and the tubes were then being subjected to close monitoring by Commission staff. The risk of vessel cracking as a result of thermal shock was similarly found to be negligible. See *In re Florida Power & Light Co. (Turkey Point Plant, Unit 4),* 14 N. R. C. 1078 (1981).

Lorion also claimed that the Commission improperly denied her the statutory right to a full public hearing on the § 2.206 request. The Commission defended the substantive integrity of its decision and argued that Lorion had no right to a hearing.

Declining to reach the merits of this dispute, the Court of Appeals decided *sua sponte* that it lacked initial subject-matter jurisdiction over Lorion's challenge to the denial of the § 2.206 petition. This result was based on the court's reading of the three statutory provisions that define the initial jurisdiction of the federal courts of appeals over Commission decisions. Under 28 U. S. C. § 2342(4), a provision of the Administrative Orders Review Act (commonly known and referred to herein as the Hobbs Act) the courts of appeals have exclusive jurisdiction over petitions seeking review of "all final orders of the Atomic Energy Commission [now the Nuclear Regulatory Commission] made reviewable by section 2239 of title 42." Title 42 U. S. C. § 2239(b) provides that the Hobbs Act governs review of "[a]ny final order entered in any proceeding of the kind specified in subsection (a) [of section 2239]." Subsection (a) proceedings are those "for the granting, suspending, revoking, or amending of any license." 42 U. S. C. § 2239(a)(1). The Court of Appeals concluded that the Commission's denial of Lorion's § 2.206 petition was not an order entered in a "proceeding for the granting, suspending, revoking, or amending of any license" within the meaning of 42 U. S. C. § 2239(a) and therefore dismissed Lorion's petition for review for lack of subject-matter jurisdiction. 229 U. S. App. D. C. 440, 712 F. 2d 1472 (1983).

The court's decision turned on its interpretation of the interrelation between the review and hearing provisions of § 2239. Section 2239(a)(1) provides that "[i]n any proceeding under this chapter, for the granting, suspending, revoking, or amending of any license . . . the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding." On the basis of this statu-

tory hearing requirement, the court reasoned that Commission action was a § 2239(a)(1) "proceeding" only if an interested person could obtain a hearing. Because the Court of Appeals for the District of Columbia Circuit had earlier held that a § 2.206 petitioner had no right to a hearing, see *Porter County Chapter of the Izaak Walton League of America, Inc.* v. *NRC*, 196 U. S. App. D. C. 456, 462, and n. 16, 606 F. 2d 1363, 1369, and n. 16 (1979), and because the Commission urged in its brief that " '[u]nless and until granted [Lorion's § 2.206 request] is not a "proceeding" where the requester has any right to present evidence,' " 229 U. S. App. D. C., at 446, 712 F. 2d, at 1478 (citation omitted), the Court of Appeals held that the denial of Lorion's § 2.206 request was not an order entered in a "proceeding" within the meaning of § 2239(a). Section 2239(b) was therefore found not to authorize initial court of appeals review of the order, and the court declined to hear the case.[5] This holding arguably departed from precedent within the Circuit,[6] and in any event created a direct conflict with the holdings of two other Circuits.[7] We granted certiorari to resolve the conflict. 466 U. S. 903 (1984). We reverse.

## II

The issue before us is whether the Commission's denial of a § 2.206 request should be considered a final order initially reviewable exclusively in the court of appeals pursuant to 42

---

[5] The Court of Appeals transferred the case to the District Court pursuant to 28 U. S. C. § 1631. See App. to Pet. for Cert. in No. 83–703, p. 15. In its opinion, the Court of Appeals had suggested that the District Court likely had subject-matter jurisdiction under either 28 U. S. C. § 1331 or 28 U. S. C. § 1337. See 229 U. S. App. D. C., at 447, 712 F. 2d, at 1479.

[6] See *Seacoast Anti-pollution League of New Hampshire* v. *NRC*, 223 U. S. App. D. C. 288, 291, 690 F. 2d 1025, 1028 (1982).

[7] See *County of Rockland* v. *NRC*, 709 F. 2d 766, 774 (CA2), cert. denied, 464 U. S. 993 (1983); *Rockford County League of Women Voters* v. *NRC*, 679 F. 2d 1218, 1219–1221 (CA7 1982).

U. S. C. § 2239(b) and 28 U. S. C. § 2342(4).[8]  This issue requires us to decide whether such an order is issued in a "proceeding . . . for the granting, suspending, revoking, or amending of any license."  42 U. S. C. § 2239(a)(1).  Enacting § 2239 in 1954, Congress did not focus specifically on this question; the Commission did not establish the § 2.206 citizen petition procedure until 20 years later.  See 39 Fed. Reg. 12353 (1974).[9]  Our task therefore is to decide whether Commission denials of § 2.206 petitions are final orders of the kind Congress intended to be reviewed initially in the court of appeals pursuant to § 2239(b).

A

We begin, as did the Court of Appeals, with the language of the statute.  See *Reiter* v. *Sonotone Corp.*, 442 U. S. 330, 337 (1979).  The crucial statutory language in subsection (b)

---

[8] In these cases we address only the question whether initial *subject-matter jurisdiction* is properly located in the court of appeals or the district court.  That is the only question on which we granted certiorari, and it is the only question that the parties have briefed and argued before this Court.  We express no views on the merits of respondent Lorion's challenge to the Commission's denial of her citizen petition made under the authority of 10 CFR § 2.206 (1984).

In addition, no party has argued that under the APA, 5 U. S. C. § 701(a)(2), Commission denials of § 2.206 petitions are instances of presumptively unreviewable "agency action . . . committed to agency discretion by law" because they involve the exercise of enforcement discretion.  See *Heckler* v. *Chaney, post,* at 828–835.  Because the question has been neither briefed nor argued and is unnecessary to the decision of the issue presented in this case, we express no opinion as to its proper resolution.  The issue is open to the Court of Appeals on remand should the Commission choose to press it.

[9] This fact does not preclude a finding that denials of § 2.206 petitions should be viewed as orders in § 2239(a) "proceedings" for purposes of the judicial review provisions of § 2239(b); "[c]learly, changes in administrative procedures may affect the scope and content of various types of agency orders and thus the subject matter embraced in a judicial proceeding to review such orders."  *Foti* v. *INS,* 375 U. S. 217, 230, n. 16 (1963).

of § 2239 is: "Any final order entered in any proceeding of the kind specified in subsection (a) of this section shall be subject to judicial review in the manner prescribed in [the Hobbs Act, 28 U. S. C. § 2341 *et seq.*]." Though subsection (b) would seem generally to locate review of licensing proceedings in the courts of appeals pursuant to 28 U. S. C. § 2342(4), the cross-reference to "proceeding[s] of the kind specified in subsection (a)" is problematic. In a vexing semantic conjunction, the sentence in subsection (a) to which subsection (b) refers sets forth both the scope of Commission licensing proceedings and the hearing requirement for such proceedings. See 42 U. S. C. § 2239(a)(1) ("In any proceeding under this chapter, for the granting, suspending, revoking, or amending of any license . . . the Commission shall grant a hearing to any person whose interest may be affected by the proceeding").

The Court of Appeals found this statutory language "clear-cut." 229 U. S. App. D. C., at 445, 712 F. 2d, at 1477. We do not find it so. Though the linkage in § 2239 of the definition of proceeding and hearing could be read as the Court of Appeals read it, see *supra*, at 733–734, § 2239 could as easily be read as reflecting two *independent* congressional purposes: (1) to provide for hearings in licensing proceedings if requested by certain individuals (those "whose interest may be affected"); and (2) to place judicial review of final orders in *all* licensing proceedings in the courts of appeals pursuant to the Hobbs Act irrespective of whether a hearing before the agency occurred or was requested. On this alternative reading, the cross-reference in subsection (b) to "proceeding[s] of the kind specified in subsection (a)," 42 U. S. C. § 2239(b), was meant only to refer to the language "any proceeding under this chapter, for the granting, suspending, revoking, or amending of any license," § 2239(a)(1). If read this way, subsection (b) reflects no congressional intent to limit initial court of appeals review to Commission actions in which a hearing took place.

To discern the correct interpretation of this statute we must therefore decide whether Congress intended to authorize initial court of appeals review by reference to the procedures accompanying agency action (*i. e.*, by reference to whether a hearing was held) or by reference to the subject matter of the agency action (*i. e.*, by reference to whether the order was issued in a licensing proceeding). Adopting the former interpretation, the Court of Appeals relied solely on what it took to be the plain meaning of § 2239. Yet plain meaning, like beauty, is sometimes in the eye of the beholder. The court below inferred "plain meaning" from the conjunction of the hearing requirement and the description of the scope of licensing proceeedings in subsection (a) without consulting indicia of congressional intent in the legislative history or general principles respecting the proper forum for judicial review of agency action. Because we find the statute ambiguous on its face, we seek guidance in the statutory structure, relevant legislative history, congressional purposes expressed in the choice of Hobbs Act review, and general principles respecting the proper allocation of judicial authority to review agency orders. We conclude that these sources indicate that Congress intended to provide for initial court of appeals review of all final orders in licensing proceedings whether or not a hearing before the Commission occurred or could have occurred.

## B

Relevant evidence of congressional intent in the legislative history, though fragmentary, supports this interpretation. The legislative metamorphoses of the various bills that eventually became the Atomic Energy Act of 1954 strongly suggest that Congress intended to define the scope of initial court of appeals review according to the subject matter of the Commission action and not according to whether the Commission held a hearing. As originally introduced in both the House and the Senate, the provision governing judicial

review (§ 189 of the proposed Act) provided that "[a]ny proceeding to enjoin, set aside, annul or suspend any order of the Commission shall be brought as provided by [the Hobbs Act, 28 U. S. C. § 2341 *et seq.*]." H. R. 8862, 83d Cong., 2d Sess., § 189 (1954); S. 3323, 83d Cong., 2d Sess., § 189 (1954). After hearings by the Joint Committee on Atomic Energy, the judicial review provision was amended to provide for initial court of appeals review of "[a]ny final order granting, denying, suspending, revoking, modifying, or rescinding any license . . . ." Joint Committee on Atomic Energy, 83d Cong., 2d Sess., § 189 (Comm. Print of May 21, 1954). Though this change was unexplained, it appears to have been intended to limit the scope of judicial review to final orders entered in *licensing* proceedings; the earlier version had more broadly authorized review of "any order of the Commission." Soon after the bill incorporating this provision was submitted to the full Congress, a shortcoming in the proposed scope of review became apparent. Judicial review would not extend to final orders in proceedings that terminated short of a suspension, revocation, or amendment of a license; those seeking to challenge Commission decisions *not* to suspend, revoke, or amend could not obtain initial court of appeals review. Remedying this deficiency, Senator Hickenlooper proposed an amendment to expand the authorization for review to final orders issued in *"any proceeding under this act,* for the granting, suspending, revoking, or amending of any license . . . ." Amendment to S. 3690, 83d Cong., 2d Sess., § 189 (July 16, 1954) (emphasis added).

The hearing requirement under the Act developed independently of the review provisions until the last step of the legislative process. As introduced in the House and the Senate, the original bills did not provide for a hearing in licensing determinations. See H. R. 8862, *supra;* S. 3323, *supra.* The lack of a hearing requirement prompted expressions of concern at Committee hearings, S. 3323 and H. R. 8862, To Amend the Atomic Energy Act of 1946: Hearings on

S. 3323 and H. R. 8862 before the Joint Committee on Atomic Energy, 83d Cong., 2d Sess., 65, 113–114, 152–153, 226–227, 328–329, 352–353, 400–401, 416–417 (1954), and led to an amendment to § 181 of the proposed Act providing for a hearing in "any agency action." H. R. 9757, 83d Cong., 2d Sess., § 181 (1954). This provision was soon recognized as too broad a response to the perceived need, see 100 Cong. Rec. 10686 (1954) (remarks of Sen. Pastore) ("That wording was thought to be too broad, broader than it was intended to make it"), and the hearing requirement was tailored to the scope of proceedings authorized under the licensing Subchapter. Senator Hickenlooper accomplished this narrowing with the same amendment he used to broaden the scope of reviewable licensing determinations. He simply proposed to add the hearing requirement to § 189, which until then had governed only judicial review; in this way the hearing authorization was limited to licensing proceedings. Amendment to S. 3690, *supra*, § 189. The proposed amendment was accepted and the current § 2239 reflects its precise wording.

The evolution of the judicial review provision reveals a congressional intent to provide for initial court of appeals review of all final orders in licensing proceedings. When Congress decided on the scope of judicial review, it did so solely by reference to the subject matter of the Commission action and not by reference to the procedural particulars of the Commission action. That the hearing provision evolved independently reinforces the conclusion that Congress had no intention to limit initial court of appeals review to cases in which a hearing occurred or could have occurred. The only possible evidence of congressional intent to limit court of appeals review by reference to the procedures used is the last-minute marriage of the hearing and review provisions in the Hickenlooper Amendment. Nothing in the legislative history affirmatively suggests that Congress intended this conjunction of the hearing and review provisions to limit ini-

tial court of appeals review to final orders resulting from proceedings in which a hearing occurred. To the contrary, this semantic conjunction indicates no more than a congressional intent to provide for a hearing in the *types* of proceedings in which initial court of appeals review would take place—that is, licensing proceedings. See 100 Cong. Rec. 10686 (1954) (remarks of Sen. Pastore) ("The amendment limits the provision to hearings on licenses in which a review shall take place").

## C

Whether subject-matter jurisdiction over denials of § 2.206 petitions properly lies in the district courts or the courts of appeals must also be considered in light of the basic congressional choice of Hobbs Act review in 42 U. S. C. § 2239(b). The Hobbs Act specifically contemplated initial court of appeals review of agency orders resulting from proceedings in which no hearing took place. See 28 U. S. C. § 2347(b) ("When the agency has not held a hearing . . . the court of appeals shall . . . pass on the issues presented, when a hearing is not required by law and . . . no genuine issue of material fact is presented"). One purpose of the Hobbs Act was to avoid the duplication of effort involved in creation of a separate record before the agency and before the district court. See H. R. Rep. No. 2122, 81st Cong., 2d Sess., 4 (1950) ("[T]he submission of the cases upon the records made before the administrative agencies will avoid the making of two records, one before the agency and one before the court, and thus going over the same ground twice"). Cf. *Harrison* v. *PPG Industries, Inc.*, 446 U. S. 578, 593 (1980) ("The most obvious advantage of direct review by a court of appeals is the time saved compared to review by a district court, followed by a second review on appeal").

Given the choice of the Hobbs Act as the primary method of review of licensing orders, we have no reason to think Congress in the Atomic Energy Act would have intended to preclude initial court of appeals review of licensing proceedings

in which a Commission hearing did not occur when the Hobbs Act specifically provides for such review and the consequence of precluding it would be unnecessary duplication of effort.

## D

The legislative history and the basic congressional choice of Hobbs Act review lead us to conclude that Congress intended to vest in the courts of appeals initial subject-matter jurisdiction over challenges to Commission denials of § 2.206 petitions. An examination of the consequences that would follow upon adoption of the contrary rule proposed by the Court of Appeals in these cases confirms the soundness of this conclusion. The Court of Appeals did not specify whether it thought § 2239 vested the courts of appeals with initial jurisdiction over only proceedings in which a hearing actually occurred or over proceedings in which a hearing could have occurred had one been requested. Either approach results in consequences that cannot be squared with general principles respecting judicial review of agency action.

If initial review in the court of appeals hinged on whether a hearing before the agency *actually occurred*, then some licensing proceedings will be reviewed in the courts of appeals while others will not depending on whether a hearing is requested. It is clear that § 2239 contemplates the possibility of proceedings without hearings. Absent a request from a person whose interest may be affected by the proceeding no hearing is required. 42 U. S. C. § 2239(a)(1) ("In any proceeding under this chapter . . . the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding"). Thus if no one requests a hearing or if the only request comes from a person whose interest cannot be affected by the issues before the Commission in the proceeding, no hearing will be held. See, *e. g.*, *Bellotti* v. *NRC*, 233 U. S. App. D. C. 274, 725 F. 2d 1380 (1983). The locus of judicial review would thus depend on the "fortuitous circumstance" of whether an interested per-

son requested a hearing, see *Crown Simpson Pulp Co.* v. *Costle*, 445 U. S. 193, 196–197 (1980). This sorting process would result in some final orders in licensing proceedings receiving two layers of judicial review and some receiving only one. "Absent a far clearer expression of congressional intent, we are unwilling to read the Act as creating such a seemingly irrational bifurcated system." *Id.*, at 197.

If initial review in the court of appeals hinged on whether a hearing *could have taken place* had an interested person requested one, different but equally irrational consequences follow. All final orders in full-blown Commission licensing proceedings in which the issue is the granting, suspending, revoking, or amending of a license would be reviewed initially in the court of appeals irrespective of whether a hearing occurred before the agency. But final orders in summary proceedings and informal Commission rulemaking authorized in § 2239(a) would be reviewed initially in the district court because the Commission does not currently provide for a hearing in such situations.[10]

At least two implausible results would flow from excluding orders in such situations from initial review in the court of appeals. First, the resulting duplication of judicial review in the district court and court of appeals, with its attendant delays, would defeat the very purpose of summary or infor-

---

[10] For example, the Commission requires a person seeking a hearing in a licensing proceeding to establish at least one contention with basis and specificity, see *BPI* v. *AEC*, 163 U. S. App. D. C. 422, 502 F. 2d 424 (1974), and to make an initial showing that a genuine issue of material fact exists, 10 CFR § 2.749 (1984). Similarly, rulemaking under § 2239(a) is typically accompanied only by notice and comment procedures. See *Connecticut Light & Power Co.* v. *NRC*, 218 U. S. App. D. C. 134, 673 F. 2d 525, cert. denied, 459 U. S. 835 (1982).

The cases before us present no question, and thus we express no opinion, as to the Commission's authority to condition or restrict the statutory hearing requirement of 42 U. S. C. § 2239(a)(1) in these or any other ways. In particular, we express no opinion as to whether the Commission properly denied respondent Lorion's request for a hearing on her § 2.206 petition.

mal procedures before the agency—saving time and effort in cases not worth detailed formal consideration or not requiring a hearing on the record. See *Investment Company Institute* v. *Board of Governors of Federal Reserve System,* 179 U. S. App. D. C. 311, 317–318, 551 F. 2d 1270, 1276–1277 (1977); Verkuil, Judicial Review of Informal Rulemaking, 60 Va. L. Rev. 185, 204 (1974). Second, such an approach would cause bifurcation of review of orders issued in the same proceeding. While the final order in the licensing proceeding would be reviewed initially in the court of appeals, numerous ancillary or preliminary orders denying requests for intervention or a hearing by persons who purport to be affected by the issues in the proceeding would be reviewed initially in the district court. In the absence of specific evidence of contrary congressional intent, however, we have held that review of orders resolving issues preliminary or ancillary to the core issue in a proceeding should be reviewed in the same forum as the final order resolving the core issue. *Foti* v. *INS,* 375 U. S. 217, 227, 232 (1963); see L. Jaffe, Judicial Control of Administrative Action 422 (1965); Currie & Goodman, Judicial Review of Federal Administrative Action: Quest for the Optimum Forum, 75 Colum. L. Rev. 1, 60 (1975).

Perhaps the only plausible justification for linking initial review in the court of appeals to the occurrence of a hearing before the agency would be that, absent a hearing, the reviewing court would lack an adequate agency-compiled factual basis to evaluate the agency action and a district court with factfinding powers could make up that deficiency. Such a justification cannot, however, be squared with fundamental principles of judicial review of agency action. "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp* v. *Pitts,* 411 U. S. 138, 142 (1973). The task of the reviewing court is to apply the appropriate APA standard of review, 5 U. S. C. § 706, to the

agency decision based on the record the agency presents to the reviewing court. *Citizens to Preserve Overton Park* v. *Volpe*, 401 U. S. 402 (1971).

If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. We made precisely this point last Term in a case involving review under the Hobbs Act. *FCC* v. *ITT World Communications, Inc.*, 466 U. S. 463, 468–469 (1984); see also *Camp* v. *Pitts, supra.* Moreover, a formal hearing before the agency is in no way necessary to the compilation of an agency record. As the actions of the Commission in compiling a 547-page record in this case demonstrate, agencies typically compile records in the course of informal agency action. The APA specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred. See 5 U. S. C. §§ 551(13), 704, 706.

The factfinding capacity of the district court is thus typically unnecessary to judicial review of agency decisionmaking. Placing initial review in the district court does have the negative effect, however, of requiring duplication of the identical task in the district court and in the court of appeals; both courts are to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review. One crucial purpose of the Hobbs Act and other jurisdictional provisions that place initial review in the courts of appeals is to avoid the waste attendant upon this duplication of effort. *Harrison* v. *PPG Industries, Inc.*, 446 U. S., at 593; *Investment Company*

*Institute, supra,* at 317, 551 F. 2d, at 1276. Absent a firm indication that Congress intended to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals.

These considerations apply with full force in the present cases. Locating initial review in the district court would certainly result in duplication of effort and probably result in bifurcation of review in that persons seeking to use § 2.206 petitions to broaden the scope of ongoing Commission proceedings would, if unsuccessful, obtain review in the district court while review of the final order in the proceeding would occur in the court of appeals.[11]

---

[11] Respondent Lorion also argues that the Commission itself does not consider its denial of a § 2.206 petition an order issued in a "proceeding" as that term is understood in 42 U. S. C. § 2239(a)(1). This argument is based in large part on the language of 10 CFR § 2.206 (1984). That language authorizes the Director of Nuclear Reactor Regulation to "institute a proceeding" in response to a § 2.206 petition raising substantial safety questions. An order denying a § 2.206 petition is an order refusing to institute a proceeding, respondent Lorion argues, and therefore cannot be an order issued in a proceeding because none has been instituted. Also, in some unfortunate language in its brief before the Court of Appeals below, the Commission argued that respondent Lorion had no right to a hearing because no "proceeding" commences until an order to show cause pursuant to 10 CFR § 2.202 (1984) is issued. See 229 U. S. App. D. C., at 446, 712 F. 2d, at 1478 (quoting Government brief below at 24–25). We do not think the issue of congressional intent as to subject-matter jurisdiction should turn on such semantic quibbles. In neither its regulations nor its initial brief below did the Commission intend to suggest an opinion as to the proper forum for judicial review of denials of § 2.206 petitions. The § 2.206 petition is but the first step in a process that will, if not terminated for any reason, culminate in a full formal proceeding under 42 U. S. C. § 2239(a)(1). We have already made clear that subject-matter jurisdiction to review summary orders terminating licensing proceedings prior to a full hearing should lie in the courts of appeals. See *supra,* at 742–743. The denial of a § 2.206 petition is simply a summary procedure that terminates a proceeding at the first step of the process. Thus initial court of appeals subject-matter jurisdiction over Commission denials of § 2.206 petitions

## III

Whether initial subject-matter jurisdiction lies initially in the courts of appeals must of course be governed by the intent of Congress and not by any views we may have about sound policy. *Harrison* v. *PPG Industries, Inc., supra,* at 593. In these cases, the indications of legislative intent we have been able to discern suggest that Congress intended to locate initial subject-matter jurisdiction in the courts of appeals. This result is in harmony with Congress' choice of Hobbs Act review for Commission licensing proceedings in § 2239(b) and is consistent with basic principles respecting the allocation of judicial review of agency action. We therefore hold that 42 U. S. C. § 2239 vests in the courts of appeals initial subject-matter jurisdiction over Commission orders denying § 2.206 citizen petitions. Accordingly, the judgment below is reversed, and the cases are remanded to the Court of Appeals for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

Anyone may write a letter to the Nuclear Regulatory Commission requesting it to initiate enforcement proceedings.[1] Today the Court holds that Congress has required review in the court of appeals whenever the Commission denies such a request. This holding is inconsistent with the plain language

---

should not be rejected for the reason that these orders are not products of "proceedings."

This argument in reality is a claim that denials of § 2.206 petitions occur too early in the process to be considered final orders in licensing proceedings. That argument, properly understood, is a claim that such Commission decisions are exercises of enforcement discretion. As such, the argument goes to whether such decisions are reviewable under the APA, see n. 8, *supra,* and not to whether the courts of appeals have initial subject-matter jurisdiction.

[1] The Commission has adopted regulations specifying how such letters should be processed. See 10 CFR § 2.206 (1984).

of the controlling statute and the Commission's regulations. It also ignores the settled principle of administrative law that "individual decisions [of an administrative agency] not to take enforcement action in response to citizen requests are presumptively not reviewable under the Administrative Procedure Act, 5 U. S. C. §§ 701–706." *Heckler* v. *Chaney, post,* at 838 (BRENNAN, J., concurring).

## I

There is no ambiguity in the language of the relevant statutes. Title 28 U. S. C. § 2342 provides:

"The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—

.              .              .              .              .

"(4) all final orders of the [Nuclear Regulatory Commission] made reviewable by section 2239 of title 42 . . . ."[2]

Thus, the question of statutory construction is whether the Commission's refusal to initiate an enforcement proceeding is a "final orde[r] . . . made reviewable by section 2239 of title 42."

The cross-referenced statute[3] contains two subsections, 42 U. S. C. §§ 2239(a), (b). Subsection (b) confers jurisdiction on the court of appeals to review final orders "entered in any proceeding of the kind specified in subsection (a) of

---

[2] Although the statute actually refers to the Atomic Energy Commission, § 201(f) of the Energy Reorganization Act of 1974, 88 Stat. 1242, 42 U. S. C. § 5841(f), transferred the relevant licensing and regulatory authority of that Commission to the Nuclear Regulatory Commission. Section 301(g) of the same Act provides that the new Commission is successor to the old for purposes of applying statutes governing judicial review. 88 Stat. 1248, 42 U. S. C. § 5871(g).

[3] Title 42 U. S. C. § 2239 was enacted as § 189 of the Atomic Energy Act, 68 Stat. 955.

this section." Thus, the orders of the Nuclear Regulatory Commission that are reviewable in the court of appeals are only those entered in the specific kinds of proceedings identified in subsection (a).[4] That subsection requires that the Commission grant a hearing upon the request of any interested person in "any proceeding under this chapter, for the granting, suspending, revoking, or amending of any license or construction permit, . . . and . . . any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees." Through the cross-reference in subsection (b), proceedings initiated for these purposes are also the proceedings in which the final order of the agency is reviewable in the court of appeals.

The Commission has adopted regulations concerning proceedings to modify, suspend, or revoke a license. These regulations provide that the "Director of Nuclear Reactor Regulation . . . may institute a proceeding to modify, suspend, or revoke a license or for such other action as may be proper by serving on the licensee an order to show cause." 10 CFR § 2.202(a) (1984). These proceedings, of course, are the proceedings described in § 2239(a) which are reviewable in the court of appeals under § 2239(b). The Director may initiate these proceedings on his own information or on the basis of materials submitted by any citizen in a request for enforcement which "set[s] forth the facts that constitute the basis for the request." 10 CFR § 2.206(a) (1984).[5] In the latter event, the regulations explain that the Director, at his

---

[4] The relevant portion of § 2239(a) reads as follows:

"(1) In any proceeding under this chapter, for the granting, suspending, revoking, or amending of any license or construction permit, . . . and in any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees, . . . the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding, and shall admit any such person as a party to such proceeding."

[5] "Any person may file a request for the Director of Nuclear Reactor Regulation . . . to institute a proceeding pursuant to § 2.202 to modify, suspend or revoke a license, or for such other action as may be proper."

discretion,[6] either will or will not institute the requested proceeding. § 2.206(b).[7]

In this case, respondent Lorion (hereafter respondent) sent a 10-paragraph letter to the Commission urging that safety problems might require a license suspension or a temporary shut-down of Florida Power & Light Co's. Turkey Point Unit #4. App. 8. Three and a half weeks later, the Director of Nuclear Reactor Regulation provided respondent with a written opinion entitled "Director's Decision Under 10 CFR 2.206."[8] As the Commission's regulation plainly states, the Director's decision "shall either initiate the requested proceeding" or shall advise the requesting party "that no proceeding will be instituted in whole or in part, with respect to his request, and the reasons therefor." In this case, the Director's decision plainly was of the latter type; he decided *not* to initiate a proceeding for any of the purposes enumerated in § 2239(a) and § 2.202.

Because no proceeding of the kind described in § 2239(a) was initiated, the Commission was not required to grant respondent's request for a hearing.[9] Likewise, under the

---

[6] Section 2.206(c)(2) provides that "[n]o petition or other request for Commission review of a Director's decision under this section will be entertained by the Commission." The regulations, however, do allow that in the exceptional case "the Commission may on its own motion review that decision . . . to determine if the Director has abused his discretion."

[7] Section 2.206(b) provides:

"Within a reasonable time after a request pursuant to paragraph (a) of this section has been received, the Director of Nuclear Reactor Regulation . . . *shall either institute the requested proceeding* in accordance with this subpart *or shall advise the person who made the request in writing that no proceeding will be instituted* in whole or in part, with respect to his request, and the reasons therefor." (Emphasis added.)

[8] *In re Florida Power & Light Co. (Turkey Point Plant, Unit 4)*, 14 N. R. C. 1078 (1981).

[9] See *Illinois* v. *NRC*, 591 F. 2d 12, 14 (CA7 1979); cf. *Porter County Chapter of the Izaak Walton League of America, Inc.* v. *NRC*, 196 U. S. App. D. C. 456, 462, 606 F. 2d 1363, 1369 (1979). In the Court of Appeals, the Commission defended its refusal to grant respondent a hearing on her

express language of § 2239(b), the Director's denial of respondent's request was not a "final order entered in any proceeding of the kind specified in subsection (a)" which would be reviewable in the court of appeals.

## II

The Court rejects the plain and simple construction of the statutory language, observing that "subject-matter jurisdiction should [not] turn on such semantic quibbles." *Ante,* at 745, n. 11. Proper deference to the powers of Congress, however, requires exactly that result. It is hardly an equivocation to argue that "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc.* v. *Dollar Park and Fly, Inc.,* 469 U. S. 189, 194 (1985). Even if the Court's tortured effort to generate an ambiguity in the statute were supported by an implicit assumption that the court of appeals is the more efficient forum for review of informal agency decisionmaking, that assumption is debatable at best and does not justify judicial revision of the statutory text.

Congress' failure to provide an avenue for direct appeal to the court of appeals of informal agency decisions like the one involved in this case may well implement its judgment that agency actions "committed to agency discretion by law" are not reviewable by the federal courts. 5 U. S. C. § 701(a)(2). In this case, the Director decided *not* to initiate an enforcement proceeding under § 2239(a) and § 2.202. "This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally com-

---

§ 2.206 request by succinctly stating that " '[a] request for an enforcement proceeding is just that—a request. Unless and until granted, it is not a "proceeding" where the requester has any right to present evidence.' " See Brief for Respondent 26–27 (quoting Brief for the Nuclear Regulatory Commission in No. 82–1132 (CADC), pp. 24–25).

mitted to an agency's absolute discretion. . . . This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement." *Heckler* v. *Chaney, post,* at 831.[10]

The reviewability of such decisions does not, in my opinion, depend on the kind of public record that the agency chooses to make before it decides not to initiate an enforcement proceeding. In this case, without adversary presentations, the agency elected to compile a 547-page record from available materials before it denied respondent's request that it commence a proceeding to suspend Florida Power & Light's license. The agency is to be commended for giving the public access to the reasoning that led to its decision. The lengthy record, however, does not make the agency's inaction here any more reviewable than if respondent's request had been rejected in a one-paragraph letter sent by return mail.

There are, of course, cases in which an agency's refusal to initiate an enforcement proceeding constitutes such a clear abdication of the agency's statutory responsibilities that a court may order it to take action. See, *e. g., Dunlop* v. *Bachowski*, 421 U. S. 560, 566–576 (1975). Cases of that kind, however, represent the exception rather than the rule,[11] for "[t]he decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution" which has traditionally been unreviewable. *Butz* v. *Economou*, 438 U. S. 478, 515 (1978).

---

[10] See also *Southern R. Co.* v. *Seaboard Allied Milling Corp.*, 442 U. S. 444, 455 (1979); *NLRB* v. *Sears, Roebuck & Co.*, 421 U. S. 132, 138 (1975); *Moog Industries, Inc.* v. *FTC*, 355 U.S. 411, 413 (1958); cf. *United States* v. *Batchelder*, 442 U. S. 114, 124 (1979).

[11] As the *Bachowski* case holds, judicial review in such cases may be authorized by 28 U. S. C. § 1337, conferring jurisdiction on the district court. 421 U. S., at 566. The Court, however, identifies no prior case in which it has held that an agency decision *not* to initiate enforcement proceedings is subject to direct review in a court of appeals.

As the Court recognizes, *ante,* at 735, n. 8, 745–746, n. 11, in this case it is not necessary to decide whether the Director's denial of an informal enforcement request is an exercise of unreviewable agency discretion. The only question raised is whether review of such actions, if any, shall be had in the court of appeals. The view that "Congress has not intended courts to review such mundane matters," *Heckler* v. *Chaney, post,* at 839 (BRENNAN, J., concurring), nevertheless, supports an interpretation of § 2239(b) that would deny court of appeals review. Only this construction does justice to the plain meaning of the relevant jurisdictional statutes, to the Commission's regulations, and to settled principles of administrative law.

Accordingly, I respectfully dissent.