**CROWLEY'S YACHT YARD, INC., Plaintiff,**

v.

**Federico PEÑA, Secretary of Transportation, United States Department of Transportation, Defendant.**

**Civ. A. No. 94–1152 SSH.**

United States District Court, District of Columbia.

Sept. 26, 1994.

Stanley M. Gorinson, John Longstreth, Mark Ruge, Preston, Gates, Ellis & Rouvelas Meeds, Washington, DC, for plaintiff.

Asst. U.S. Atty. Keith V. Morgan, U.S. Attorney's Office, Washington, DC, for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter comes before the Court on the parties' cross-motions for summary judgment, and plaintiff's motion for expedited consideration or, in the alternative, for a preliminary injunction. Upon consideration of the entire record, the Court grants plaintiff's motion for summary judgment, and denies defendant's motion for summary judgment. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions [for summary judgment]," the Court nonetheless sets forth its analysis. Fed.R.Civ.P. 52(a).

### Background

The instant action arises out of the promulgation of a regulation restricting the movement of recreational vessels through the Chicago River. Drawbridge Operation Regulation, Chicago River, IL, 59 Fed.Reg. 18298 (1994) (to be codified at 33 C.F.R. § 117.391). The Coast Guard, a division of the Department of Transportation, promulgated the regulation pursuant to 33 U.S.C. § 499(a) and 33 C.F.R. § 1.05–1 (1993). Plaintiff, an owner and operator of a boatyard which stores recreational vessels, seeks to have the rule set aside.

Over 30 drawbridges cross the Chicago River ("the River") and must accommodate

water traffic. Among other things, the River serves as the means by which recreational vessels travel from boatyards on the River, where they are stored for the winter, to Lake Michigan, where they are moored in marinas for the summer boating season (April 1 through November 30). Not surprisingly, water traffic peaks during the spring "breakout" period (April 15 to June 15) and the fall return (October 1 to October 31). For 18 years, the regulation controlling the operation of the drawbridges provided that recreational vessels were to be granted passage through the River's drawbridges at virtually all times except for rush hours. 33 C.F.R. § 117.391 (1993). The City of Chicago was dissatisfied with the regulation, and undertook steps to have the Coast Guard and DOT change it.[1]

After issuing a notice of proposed rulemaking, see 58 Fed.Reg. 67745 (1993), and receiving public comments, the Coast Guard issued a final rule on April 18, 1994. The rule imposes the following restrictions on the opening of drawbridges for recreational vessels during the boating season, which effectively bans weekday daytime water travel: (1) the draws need open only on Tuesday and Thursday evenings from 6:30 p.m. to 12:00 midnight, and Saturdays and Sundays from 7:00 a.m. to 7:00 p.m.; (2) 24 hours' notice must be given; and (3) at least 5 vessels and not more than 25 vessels must be available to transit through a drawbridge at one opening, except for unique circumstances, such as vessels returning for repair or in distress. 59 Fed.Reg. at 18300. An exception to the ban on weekday daytime water travel was made for the spring breakout period, permitting travel on Wednesdays from 11:00 a.m. to 2:00 p.m., subject to the notice and flotilla requirements. Plaintiff challenges the validity of the rule under the Administrative Procedure Act, 5 U.S.C. §§ 553(c), 706(2)(A) & (D).[2]

*Analysis*

■ Summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). All evidence and the inferences to be drawn from it must be considered in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ First, plaintiffs contend that the agency failed to provide the requisite "concise general statement of [the rule's] basis and purpose." 5 U.S.C. § 553(c). The statement of basis and purpose must respond to the major comments received, explain how they affected the new regulation, and, where an old regulation is replaced, explain why the old regulation is no longer desirable. *See Action on Smoking & Health v. Civil Aeronautics Bd.*, 699 F.2d 1209, 1216 (D.C.Cir. 1983); *Independent U.S. Tanker Owners Comm. v. Lewis*, 690 F.2d 908, 919 (D.C.Cir. 1982) ("ITOC"). The instant regulation fails to meet these requirements. The "discussion" of the major comments is descriptive only, not explanatory. *ITOC*, 690 F.2d at 919. It also fails to provide any explanation as to why the old rule was unsatisfactory. The most that can be said of the new regulation is that it states in conclusory fashion that "[t]his action will accommodate the needs of vehicle traffic, while providing for the reasonable needs of navigation," then summarizes the comments for and against the proposed rule, and then concludes that permitting daytime travel from 11:00 a.m. to 2:00 p.m. on Wednesdays will fairly balance the competing interests. While the agency is not required to "discuss every item of fact or opinion included in the submissions made to it," it is required to provide a statement that reveals "what major issues of policy were ventilated by the informal proceedings and why the agency reacted to them as it did."

---

1. After receiving the City's request, the Coast Guard issued five temporary rules, pursuant to 33 C.F.R. § 117.43 (1993). Although plaintiff alleges that these were inappropriately issued, the temporary rules are not the subject of this litigation.

2. The complaint also alleges that the regulation violates the Bridge Act of 1906, as amended, 33 U.S.C. § 494. As plaintiff does not pursue this claim in its motion for summary judgment, the Court does not address it.

*United States v. Nova Scotia Food Prods., Corp.*, 568 F.2d 240, 252 (2d Cir.1977) (citing *Automotive Parts & Accessories Ass'n v. Boyd*, 407 F.2d 330, 338 (D.C.Cir.1968)). Because the agency failed to explain how the major comments affected its consideration of the rule or how it reached the final rule, the Court finds that the rule's statement of basis and purpose is inadequate.

Normally, this conclusion would end the Court's inquiry, and the action would be remanded to the agency for further explanation. *Environmental Defense Fund v. Costle*, 657 F.2d 275, 285 (D.C.Cir.1981). As plaintiff seeks to have this rule vacated and the *status quo* reinstated, the Court proceeds to address plaintiff's other challenges.

■ Under the APA, a rule may be set aside if it is found to be arbitrary and capricious. 5 U.S.C. § 706(2)(A). An agency rule is arbitrary and capricious if the agency has "entirely failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). Thus, "[the Court's] task is to determine whether the agency has articulated a rational connection between its factual judgment and its ultimate policy choice, and whether the underlying factual judgments are supported by substantial evidence." *Center for Auto Safety v. Federal Highway Admin.*, 956 F.2d 309, 313 (D.C.Cir.1992) (citations omitted). Such review is deferential, and a reviewing court may not substitute its judgment for that of the agency. *State Farm*, 463 U.S. at 41–43, 103 S.Ct. at 2866. At the same time, a reviewing court may not supply a basis for upholding the agency's action that the agency itself has not given, nor may the Court accept *post hoc* rationalizations proffered by the agency's counsel. *Id.* 463 U.S. at 43–45, 103 S.Ct. at 2867; *Securities and Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 195–

97, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). The agency's decision must stand or fall on the basis articulated by the agency itself.

Plaintiff contends that the final rule is arbitrary and capricious on the grounds that: (1) the disparate treatment of the drawbridge openings during the spring and fall peak periods is not rational and runs counter to the evidence, *i.e.*, the provision of a three-hour window of time for weekday daytime travel in the spring, but not in the fall; and (2) the ban on weekday daytime travel, even with the three-hour window, to accommodate land traffic is not supported by substantial evidence.[3] Defendant responds that the rule is rational and supported by the administrative record viewed as a whole.

■ The final rule cannot stand for two separate reasons. First, the agency failed to provide any explanation for treating the spring and fall peak periods differently. The administrative record indicates that the risk of accidents increases during nighttime travel without regard to season. *See, e.g.*, Administrative Record, at 80774, 90060–61, 90106 ("A.R."). Yet for an undisclosed and indiscernible reason, the agency determined that safety concerns warranted a small exception for daytime travel only in the spring. Counsel's proffered explanation that ambient light in the evenings during the fall season makes nighttime travel acceptable in the fall is insufficient to support the rule because it was not one asserted by or relied upon by the agency. *See Chenery*, 332 U.S. at 195–97, 67 S.Ct. at 1577.

■ Additionally, the agency's conclusion that the restrictions on weekday daytime travel are necessary to accommodate the needs of vehicular land traffic is not supported by substantial evidence. First, it is undisputed that only one traffic study was submitted to the agency in support of a ban on weekday daytime travel, a study that was discredited because the City conducted it during a major Chicago festival known as

---

**3.** Plaintiff also contends that the agency failed to consider several important issues raised during the notice and comment period, primarily (1) increased risk of accidents caused by limiting weekday water travel during peak periods primarily to nighttime; and (2) unsafe conditions associated with the flotilla requirement. The final rule and the administrative record reveal that the agency gave consideration to the safety problems raised by the comments of interested parties, although, as noted *supra* at 3–4, it failed to respond adequately to those comments.

"Taste of Chicago," which defendant concedes "may have affected traffic patterns." Answer ¶ 22. Moreover, other evidence in the record indicates that, on the contrary, daytime traffic patterns did not support the restrictions on weekday daytime travel that the City sought. *See, e.g.,* A.R. at 10207, 80769 (apparently referencing traffic data at A.R. at 80751), 80788.[4] Defendant has not pointed to any data in the administrative record that support the agency's position on land traffic needs, and the Court can find none.[5] Therefore, the Court finds that the rule is arbitrary and capricious. Accordingly, the rule is set aside. *See, e.g., National Treasury Employees Union v. Horner,* 854 F.2d 490, 499 (D.C.Cir.1988) (noting that when agency action is found to be arbitrary and capricious, the normal practice is to set it aside and reinstate the *status quo ante* ); *Occidental Petroleum Corp. v. Securities and Exchange Comm'n,* 873 F.2d 325, 338 (D.C.Cir.1989) (citing *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–46, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985)).[6]

*Conclusion*

For the foregoing reasons, plaintiff's motion for summary judgment is granted, and defendant's motion for summary judgment is denied. Plaintiff's motion for expedited consideration or, in the alternative, for a preliminary injunction is denied as moot. The Department of Transportation, Coast Guard Rule CGD09–93–036, published at 59 Fed. Reg. 18298 (1994), is vacated, and the regulation in effect immediately prior thereto, 33 C.F.R. § 117.391 (1993), is reinstated.

---

4. For example, the Chief of the Ninth District Bridge Branch of the Coast Guard, Bob Bloom, stated:

> Data submitted by City is not adequate for regulations change consideration. Traffic data presents "estimated" total volume on a daily basis and is not usable to determine peak traffic times. Bridge data, openings for 1990, 91, and 92 addresses ten bridges. The City's request addresses 32 bridges.

A.R. at 80769. Bloom stated in another memorandum to the Chief of the Operations Division that:

> Captain Balock told me that a gridlock of traffic exists in downtown Chicago whether or not the bridges [*sic* ]. The opening of bridges during the daylight hours does not cause any noticeable increase in traffic congestion. That congestion exists under any condition. Stated that is probabl[y] the reason why the City is having difficulty in providing traffic data to support claims that the bridges cause additional impact.

A.R. at 10207. Another internal Coast Guard memorandum stated that "the existing permananet [*sic* ] regulation presents a minimal prob-

lem for land traffic. The City of Chicago wants regulations changed in order to reduce bridge tender employment costs and to permit deferred/overdue bridge maintenance." A.R. at 80788.

5. To the extent the agency was considering the needs of emergency land vehicles, again the weekday daytime restrictions are not supported by substantial evidence. *See, e.g.,* A.R. at 80774 ("regulations allow bridges to remain closed for emergency vehicles to pass as needed"); A.R. at 80777 (internal Coast Guard memorandum noting that the Commissioner of the Chicago Department of Transportation and fire department representative were unable to point to specific times when drawbridges delayed the response time to an emergency call); A.R. at 80781–82 (Coast Guard memorandum discrediting City's portrayal of emergency land vehicles' response to one accident as delayed by drawbridge opening, referencing document at A.R. 80783).

6. Resolution of this action on these grounds makes it unnecessary to address plaintiff's other challenges to the rule.