**Gregory JAUNICH, Petitioner,**

v.

**UNITED STATES COMMODITY FUTURES TRADING COMMISSION, Respondent.**

No. 93–3954.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1994.

Decided March 14, 1995.

Alfred Stanbury, Minneapolis, MN, argued, for petitioner.

Gracemary Rizzo Moleski, Washington, DC, argued, for respondent.

Before WOLLMAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Gregory Jaunich has filed with this court a petition for judicial review of a decision of the United States Commodity Futures Trading Commission (CFTC), which affirmed, in part, disciplinary actions taken against him by the Minneapolis Grain Exchange (MGE). Because we conclude that we lack jurisdiction to conduct the initial review of this agency action, we transfer the matter to the appropriate United States district court.

## I.

Gregory Jaunich has been a member of the MGE since 1987, acting as both a floor broker (purchasing or selling for other persons) and a floor trader (purchasing or selling for his own account). *See* 7 U.S.C. § 1a(8) & (9) (defining "floor broker" and "floor trader"). Jaunich has served as the primary floor broker for Benson–Quinn Commodities, Inc., a registered futures commission merchant.

The disciplinary proceedings instituted by the MGE against Jaunich arose from events occurring on June 13, 1988, during a very busy "drought market." On that morning, a customer of Benson–Quinn placed four "stop orders" (orders to be executed when the market prices reach a particular level) to sell wheat futures at various specified prices. The MGE alleged that after those four stop orders had been triggered by market price levels, Jaunich traded for his own account prior to executing his customer's trades on the four stop orders. Jaunich stated that he did not recall the specific trades in question, but contends that given the fast-moving drought market he probably had not received the stop orders prior to selling for his own account.

On the same morning and at about the same time Jaunich was alleged to have made the trades ahead of his client, Jaunich recorded eight transactions opposite another broker, Gary Sikkink. The MGE alleged that those trades were not reported in the MGE's Time and Sales Report and that Jaunich's trading card on those transactions reflected prices different from those listed on the Time and Sales Report for the same time period. The MGE also produced evidence that Sikkink did not execute those trades with Jaunich. Jaunich has alleged that the chaotic conditions of the drought market changed the way that trades were recorded and reported and has argued that the rules on reporting were not vigorously enforced during that period given the chaotic conditions.

In July 1988, the MGE Compliance Department opened an investigation of the June 13, 1988, transactions described above. In November 1990, the Compliance Department notified Jaunich that charges were being brought against him dealing with the two sets of trades. After the Futures Trading Conduct Committee (FTCC) held a hearing on the charges, it found that Jaunich had violated the following MGE Rules: Rule 750, prohibiting a floor broker from trading for his own account ahead of customer's orders; Rule 741, prohibiting a member from acting as both buyer and seller in a futures transaction; Rule 714, requiring all trades to be made by open outcry; Rule 725.01, requiring that all trades be made competitively and reported to the market observer; and Rules 612.01(b) & (g), defining uncommercial conduct. The FTCC imposed a $20,000 fine and suspended Jaunich for 20 trading days.

Jaunich appealed to the CFTC. The CFTC affirmed the FTCC's findings that Jaunich had violated Rule 750, Rule 714, Rule 725.01, and Rules 612.01(b) & (g). The CFTC, however, reversed the FTCC's finding that Jaunich violated Rule 741. The CFTC remanded the case to the FTCC to reassess its sanctions in light of the reversal on one charge. On remand, the FTCC reduced the penalties to a $15,000 fine and a 15–day suspension. Jaunich again appealed to the CFTC. The CFTC affirmed the FTCC without further opinion. Jaunich has appealed the CFTC's decision directly to this court.

## II.

■ The first issue we must address is whether we have jurisdiction to review directly the CFTC's order. As a general rule, unless a statutory provision provides for jurisdiction in the court of appeals, the district courts have "exclusive jurisdiction to review any reviewable action of a federal agency." 3 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 18.2, at 165 (3d ed. 1994); *see also Noland v. United States Civil Serv. Comm'n*, 544 F.2d 333, 334 (8th Cir.1976) ("jurisdiction of the courts of appeals to review orders rendered by administrative agencies is wholly dependent upon statute"). While the analytical framework for determining whether initial review should proceed in the court of appeals or the district court appears somewhat simple, it is often complicated by confused case law standards or poorly drafted and ambiguous statutory language. 3 Davis & Pierce, *Administrative Law* § 18.2 at 165. The latter observation accurately describes the case before us.

The Commodity Exchange Act (CEA), 7 U.S.C. §§ 1–25, specifically provides that the CFTC may review disciplinary actions taken by any exchange, like the MGE. 7 U.S.C. § 12c(b). Judicial review of CFTC orders reviewing exchange disciplinary proceedings is only obliquely referenced in § 12c:

> The Commission [CFTC] may affirm, modify, set aside, or remand any exchange decision it reviews ... after a determination on the record whether the action of the exchange was in accordance with the policies of this chapter. *Subject to judicial review,* any order of the Commission [CFTC] ... shall govern the exchange in its further treatment of the matter.

7 U.S.C. § 12c(c) (emphasis added). While section 12c(c) does not specify which court should conduct judicial review of the CFTC's orders reviewing exchange disciplinary proceedings, other sections of the CEA, including those dealing with appeals of similar CFTC orders, specifically provide for initial/direct review in the United States court of appeals. *See* 7 U.S.C. § 9 (initial judicial review in court of appeals for CFTC orders imposing sanctions against any person for violating the CEA or CFTC rules, regulations, or orders); 7 U.S.C. § 21(i)(4) (initial judicial review in court of appeals for CFTC orders reviewing disciplinary action taken by registered futures association).

The CFTC argues that because section 12c is silent on the issue of which court has jurisdiction to perform the initial judicial review, we have no specific statutory authorization to perform the initial judicial review in this case. The CFTC contends that judicial review should begin in the district court and has moved to dismiss this case for want of jurisdiction, or alternatively, that we transfer this case to the district court. Jaunich, on the other hand, argues that a reading of the entire CEA indicates that initial judicial review should proceed in this court. Jaunich argues that it would not make sense to add an extra layer of review, and the time and expense that it brings, by transferring this case to the district court. Jaunich also argues that given the fact that the CFTC can institute its own disciplinary proceeding for a violation of exchange rules when the exchange itself fails to act, and that under 7 U.S.C. § 9 the CFTC initiated proceeding would be subject to judicial review directly by the court of appeals, it would be incongruent to require initial judicial review by the district court in a virtually identical case where the only difference is that the exchange initially conducted the disciplinary proceeding.

We previously have dismissed a petition for direct review of an agency decision after finding that there was no special statute

conferring jurisdiction on us to review the question presented. *Noland,* 544 F.2d at 334. Other courts, likewise, have concluded that where no authority is provided by statute for direct review of agency action in the court of appeals, judicial review should begin in the district court under 5 U.S.C. § 703. *See, e.g., International Bhd. of Teamsters v. Pena,* 17 F.3d 1478, 1481 (D.C.Cir.1994) (unless a statute provides otherwise, default rule is that initial review of agency action should begin in district court instead of court of appeals); *Illinois Dep't of Public Aid v. Schweiker,* 707 F.2d 273, 277 (7th Cir.1983) ("presumption that final agency action is reviewable in district court if no specific method of judicial review is prescribed by statute"). *See also* 3 Davis & Pierce, *Administrative Law,* § 18.2 at 165 (same). Thus, where the statute is silent on judicial review, we assume that review will proceed first in the district court.

However, where the statute is ambiguous on the subject of judicial review, other courts have resolved the ambiguities in favor of initial review of agency action in the court of appeals. *National Parks and Conservation Ass'n v. Federal Aviation Admin.,* 998 F.2d 1523, 1529 (10th Cir.1993) ("[i]f there is any ambiguity as to whether jurisdiction lies with a district court or with a court of appeals we must resolve that ambiguity in favor of review by a court of appeals") (quoting *Suburban O'Hare Comm'n v. Dole,* 787 F.2d 186, 192 (7th Cir.) *cert. denied,* 479 U.S. 847, 107 S.Ct. 169, 93 L.Ed.2d 106 (1986)). The Supreme Court has articulated the reasons for resolving ambiguities in favor of initial review in the court of appeals:

> The factfinding capacity of the district court is thus typically unnecessary to judicial review of agency decisionmaking. Placing initial review in the district court does have the negative effect, however, of requiring duplication of the identical task in the district court and in the court of appeals; both courts are to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review.

*Florida Power & Light Co. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985). The Court went on to conclude in *Florida Power* that "[a]bsent a firm indication that Congress intended to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals." *Id.* at 745, 105 S.Ct. at 1607. To determine whether Congress provided a "firm indication" that initial APA review should proceed in the district court *"Florida Power* mandated that a court must consider the legislative history, the statutory structure, and the general principles sketched [out in *Florida Power* ] regarding the proper allocation of judicial authority to review agency determinations." *Modine Mfg. Corp. v. Kay,* 791 F.2d 267, 270 (3d Cir.1986).

■ After considering these factors, we conclude that Congress has provided a "firm indication" that initial review in this case belongs in the district court. The legislative history of the Congressional treatment of judicial review of CFTC orders occurring after the *Florida Power* decision is the most revealing of the *Florida Power* factors. When Congress considered a 1986 bill to amend the CEA ("Futures Trading Act of 1986"), the then Chairman of the CFTC, Susan M. Phillips, submitted a letter to the Chairman of the House Committee on Agriculture expressing her regret that the bill did not include a provision (which the CFTC had proposed) to locate all judicial review of CFTC final action in the courts of appeals. H.R.Rep. No. 624, 99th Cong., 2d Sess., 52–54 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6053–55. Chairman Phillips emphasized that the CEA was significantly out of step with most other regulatory statutes which direct that agency decisions be reviewed directly by the courts of appeals. *Id.* at 53. She specifically stated that "Court of Appeals review of CFTC actions would save both agency and judicial as well as private parties resources by eliminating an unnecessary layer of review in the district court." *Id.*

An early Senate version of the 1986 bill contained the comprehensive judicial review section that the CFTC had proposed, along with a detailed explanation of why review of all CFTC actions should proceed directly to

the courts of appeals. 132 Cong.Rec. S950–01 (1986). The explanation specifically noted that the treatment of judicial review under the CEA was inconsistent because a number of adjudicatory-type proceedings for which the CEA did not specifically require direct review in the court of appeals, were in fact similar to those for which the court of appeals review was already required. *Id.* Two of the examples the explanation cited of proceedings that did not require court of appeals review under the CEA were CFTC "action in reviewing exchange disciplinary actions" under 7 U.S.C. § 12c, and CFTC "action in reviewing registered futures associations disciplinary actions" under 7 U.S.C. § 21(i). *Id.*

Congress declined to pass either the broad provision requiring direct judicial review in the courts of appeals from all CFTC orders or a specific provision requiring direct review in the courts of appeals for all CFTC orders reviewing exchange disciplinary proceedings. *See* Pub.L. No. 99–641. Significantly, however, Congress chose to pass into law a provision requiring direct review in the courts of appeals of all CFTC orders reviewing disciplinary actions taken by a registered futures association. *See* Pub.L. No. 99–641, § 107 (codified at 7 U.S.C. § 21(i)(4)). It appears to us that Congress was persuaded that review of some CFTC orders should proceed directly in the court of appeals, while review of other CFTC orders, like those reviewing exchange disciplinary actions, should proceed first in the district court. Thus, we conclude that the relevant legislative history provides a "firm indication" that Congress intended initial judicial review of CFTC orders reviewing exchange disciplinary proceedings to remain in the district court.

Consideration of the other *Florida Power* factors does not alter our conclusion. The structure of the CEA carries out the general Congressional preference noted above that some CFTC orders should be reviewed directly in the courts of appeals and other CFTC orders should be reviewed initially in the district courts. We do agree with Jaunich that our construction of the CEA results in different courts reviewing functionally equivalent proceedings—direct review in the court of appeals under 7 U.S.C. § 9 for exchange disciplinary proceedings initiated by the CFTC and initial review in the district court under 7 U.S.C. § 12c for exchange disciplinary proceedings initiated by the exchange and reviewed by the CFTC. While generally we should seek to avoid construing statutes to create "procedural conundrums," *see Lindquist v. Bowen,* 813 F.2d 884, 888 (8th Cir.1987), and to review in a similar manner those things which are "functionally similar," *see Conoco, Inc. v. Skinner,* 970 F.2d 1206, 1214 (3d Cir.1992), it is clear to us that Congress intended this procedural irregularity, and we are not free to override Congressional intent.

### III.

We conclude that we are without jurisdiction to directly review the CFTC's order in this case. Given that conclusion and because we also conclude that the interests of justice require transfer rather than dismissal, we grant the CFTC's alternative motion to exercise our statutory authority under 28 U.S.C. § 1631 to transfer this case to the appropriate United States District Court. Accordingly, we transfer this case to the United States District Court for the District of Minnesota. Because the brief submitted with the motion by the Minneapolis Grain Exchange to appear as *amicus curiae* addresses the merits of the dispute and does not address the jurisdictional issue, we deny the motion, but grant leave to renew it in the district court.