OYSTERSHELL ALLIANCE, et al., Petitioners,

v.

UNITED STATES NUCLEAR REGULATORY COMMISSION and United States of America, Respondents,

Louisiana Power & Light Company, Intervenor.

No. 85–1182.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 25, 1986.

Decided Sept. 9, 1986.

Lynne Bernabei, Washington, D.C., for petitioners. James B. Dougherty, was on the brief, for petitioners.

Carolyn Jourdan, Atty., Nuclear Regulatory Com'n, with whom Herzel H.E. Plaine, Gen. Counsel, Nuclear Regulatory Com'n., Peter R. Steenland, Jr., Chief, Appellate Section, Dept. of Justice, William H. Briggs, Jr., Sol., E. Leo Slaggie, Deputy Sol., Nuclear Regulatory Com'n., and Maria A. Iizuka, Atty., Dept. of Justice, Washington, D.C., were on the brief, for respondents. Thomas H. Pacheco and David C. Shilton, Attys., Dept. of Justice, Washington, D.C., also entered appearances for respondents.

· Bruce W. Churchill and Charles H. Montange, Washington, D.C., were on the brief, for intervenor Louisiana Power & Light Co.

Before EDWARDS, BORK, and BUCKLEY, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM

On March 15, 1985, the Nuclear Regulatory Commission ("NRC" or "Commission") approved the Atomic Safety and Licensing Board's ("Licensing Board") issuance of a full-power operating license for Waterford Steam Electric Station, Unit 3 ("Waterford–3"), a commercial nuclear power reactor owned by Louisiana Power & Light Company ("LP & L") and regulated by the NRC pursuant to the Atomic Energy Act ("AEA"). The NRC's approval was given notwithstanding the pendency before the Atomic Safety and Licensing Appeal Board ("Appeal Board") of two motions to reopen the administrative record filed by petitioners Oystershell Alliance and Save Our Wetlands.

Petitioners seek review of the March 15 decision, arguing that the Commission's licensing approval violated the Administrative Procedure Act ("APA") and the AEA because it was based on evidence outside the adjudicatory record. Petitioners also contend that the Commission could not lawfully authorize full-power operation of Waterford–3 without first resolving the issues raised in the motions to reopen.

These motions were subsequently denied by the Appeal Board and (with respect to one issue referred by the Appeal Board to the NRC) by the Commission, which ruled that petitioners had failed to meet the Commission's standards for reopening a closed record. Petitioners also seek review of this second decision, and the two matters are now before us.

We conclude that the NRC's decision to authorize full-power operation notwithstanding the pendency of motions to reopen was fully consistent with the statutory and regulatory requirements under which the Commission operates, and that the collateral objections raised by petitioners are without merit.

## I. BACKGROUND

In 1978, eight years after it had first applied for a permit to build the Waterford–3 nuclear reactor and while the plant was still under construction, LP & L applied to the NRC for an operating license for the facility. It was at this stage that petitioners first intervened in the proceeding, citing several problems concerning the environmental and public health risks associated with the ongoing construction and future operation of the plant.

The Licensing Board ultimately approved the Waterford–3 operating license application and, in December 1983, the Appeal Board affirmed the Licensing Board's Order and issued what was intended at the time to be its final merits decision with respect to the Waterford–3 facility. Following the Appeal Board's decision, petitioners filed two motions to reopen the proceedings in order to consider new concerns relating to (1) the appearance of cracks in the concrete basemat on which the reactor was situated and (2) the character of LP & L's management and the adequacy of its quality assurance procedures at Waterford–3.

On March 15, 1985, while these two motions were pending, the Commission issued an order approving the Licensing Board's initial decision authorizing full-power operation of Waterford–3. *In re Louisiana Power & Light Co.*, CLI–85–3, 21 N.R.C. 471 (Mar. 15, 1985). The Commission determined that the plant could operate without danger to the public health and safety on an interim basis, pending the Appeal Board's resolution of the motions to reopen. The Commission made it clear that its decision was "without prejudice to the [petitioners'] motions to reopen...." *Id.* at 471. Since that time both motions have been denied.

The Appeal Board rejected petitioners' basemat cracking claim on April 4, 1985, finding "no cause to recant its earlier findings that there are no significant safety concerns associated with cracking in the concrete basemat at Waterford." ALAB–803, 21 N.R.C. 575 (Apr. 4, 1985). On July

11, 1985, the Appeal Board similarly rejected all but one element of petitioners' motion to reopen on the management character/quality assurance issues. ALAB–812, 22 N.R.C. 5 (July 11, 1985).

The remaining issue involved petitioners' claim that ongoing investigations by the NRC's Office of Investigations ("OI") of LP & L's alleged falsification of records and harassment of quality assurance personnel demonstrated its management's lack of integrity. The Appeal Board did not have access to the information it felt it required in order to rule on this matter because the investigations were not yet completed, and the confidential information developed by OI could not be disclosed to the parties. The Board therefore referred this claim to the Commission for its disposition. *Id.* at 45–47.

In January 1986, the Commission issued a decision declaring that claim to be without merit and holding that petitioners had failed to meet the requisite criteria for reopening the case. CLI–86–1, 23 N.R.C. 1 (Jan. 30, 1986). Petitioners seek review of this final denial of their motion to reopen, and their review petitions of the March 15, 1985 and January 30, 1986 decisions are now before us in consolidated form.

## II. Discussion

We address the issues raised in each of the consolidated review petitions.

### A. *The March 15, 1985 Order Authorizing Full-Power Operation*

Petitioners make a two-pronged attack against the Commission's March 15, 1985 Order authorizing full-power operation of the Waterford–3 facility. First, they contend that the Commission's decision was unlawfully based on information not contained in the administrative record in violation of both the APA's and the AEA's adjudicatory hearing requirements. Second, petitioners assert that the pending motions to reopen the record should have been resolved before the final operating license was issued.

These arguments reveal a misunderstanding of the procedures that must be followed before full-power operations may be approved.

### 1. Adjudicatory Hearing Requirements

Section 185 of the AEA establishes a two-stage process for the construction and licensing of nuclear power facilities. The first entails the issuance of a construction permit to an applicant whose application meets with the Commission's approval; the second involves the issuance of an operating license after the Commission is satisfied that all relevant requirements for the construction and operation of the facilities have or will be met. 42 U.S.C. § 2235.

The AEA and regulations issued by the NRC pursuant to the Act provide the procedural framework for the Commission's exercise of its responsibilities at each stage. Before a construction permit is issued, and after appropriate public notice has been published, the Licensing Board must hold an adjudicatory hearing on the application. 42 U.S.C. § 2239; 10 C.F.R. § 2.104(b). On the other hand, hearings on operating license applications are held only when an interested person requests one, 42 U.S.C. § 2239(a), 10 C.F.R. § 2.714, or when the Commission *sua sponte* finds that a hearing is required in the public interest. 10 C.F.R. §§ 2.104 and 2.105. Absent a party's request or a *sua sponte* determination to hold a hearing, "the Commission may ... issue an operating license ... without a hearing...." 42 U.S.C. § 2239(a).

### a. *Examination of Extra-Record Evidence*

In the event a hearing is not requested, and with respect to those areas not contested when one is, the Commission must examine all factors it considers relevant to the safety of the reactor. Thus in making its operating licensing determinations, the Commission must take account of all relevant information in the administrative record whether or not it is part of the adjudicatory record.

The Commission's ability to review the entire administrative record is particularly appropriate with regard to pending motions to reopen the record. As the Third Circuit recently stated in *In Re Three Mile Island Alert, Inc.*, 771 F.2d 720, 732 (3d Cir.1985):

At the outset, we reject petitioner's contention that the Commission cannot rely on extra-record material in assessing the significance of evidence submitted in support of a motion to reopen the record. "Newly proferred material" is by definition extra-record. Because it is also "new" by definition, in the vast majority of cases, limiting the Commission's consideration of a motion to reopen to data already in the record would require that the moving party's allegations be accepted at face value. We think such a rule arbitrary and unworkable. If the Commission has, or can obtain through investigation, information bearing on the subject matter of a motion to reopen, we conclude that it should be free to use that information in deciding that motion.

In reaching its March 15 decision, the Commission was required to examine the petitioners' pending motions to reopen the formal adjudicatory record on the subjects of basemat cracking, quality assurance, and management competence. Of necessity, these motions introduced "newly proferred material" that could only be assessed in the light of up-to-date information not in the Licensing Board's original adjudicatory record. This assessment was both proper and necessary in light of the Commission's regulatory mandate to make a decision "based on a consideration of the gravity of the substantive issue, the likelihood that it has been resolved incorrectly below, the degree to which correct resolution of the issue would be prejudiced by operation pending review, and other relevant public interest factors." 10 C.F.R. § 2.764(f)(2)(i).

### b. *Opportunity to Respond*

█ Petitioners assert they were unduly prejudiced by the Commission's reliance on extra-record evidence because they were given no opportunity to respond. We disagree, finding that petitioners enjoyed all the procedural rights afforded by the APA and the AEA in the context of a motion to reopen, including adequate opportunity to respond and supplement the administrative record.

The material contested by petitioners as outside the adjudicatory record was made available to them and could have been used in the reopening proceedings. As noted by the Appeal Board in its April 4, 1985 decision rejecting petitioners' basemat motion:

The staff has now supplied extensive affidavits and reports in response to our questions. Accepting our invitation to comment on the staff's filings, LP & L likewise has submitted more detailed information on the basemat. Although afforded a like opportunity to comment, [petitioners] have filed nothing on this matter since their brief December 1983 motion.

ALAB–803, 21 N.R.C. at 578 (Apr. 4, 1985). In the case of the second motion, petitioners took advantage of the Appeal Board's invitation to respond to further submissions by LP & L and the NRC concerning the quality assurance/management character motion. ALAB–801, 21 N.R.C. 479 (Mar. 22, 1985); ALAB–812, 22 N.R.C. 5 (July 11, 1985).

### 2. Licensing Approval Pending Motions to Reopen

Petitioners also claim that their motions to reopen should have been decided *prior* to the Commission's authorization of full-power operation, to which we reply: (1) Such a stance is inconsistent with long-standing NRC regulations and practice; and (2) the issue is now moot, as both motions have since been resolved against petitioners.

### a. *"Immediate Effectiveness" Regulation*

In order to minimize delays in putting a completed nuclear power plant into operation, operating license proceedings are conducted simultaneously with its construction. Frequently, due to the time-consum-

ing nature of the licensing review process, plant construction is completed by the time the Licensing Board renders its initial decision authorizing a license, but before the Commission's internal review of the Licensing Board's approval has been completed.

■ In an effort to prevent costly delays following the Licensing Board's initial approval, the Commission has instituted procedures under which a non-merits determination is made by the Commission as to whether the "operating license shall be effective immediately upon issuance...." 10 C.F.R. § 2.764(a). This determination, which is without prejudice to a decision on the merits on issues raised in the licensing proceedings, is termed an "immediate effectiveness review." This review allows the Licensing Board's authorization of full-power operation to become effective while the resolution of contested issues continues through the internal appeals process. *Id.*

Prior to the 1979 Three-Mile Island accident, the NRC's regulations allowed full-power operation of a nuclear reactor upon the issuance of the Licensing Board's initial decision approving such operation. No additional action was required by the Commission. *See* 36 Fed.Reg. 828 (1971); 10 C.F.R. § 2.764 (1979). This decision was "immediately effective" notwithstanding the filing of an appeal with the Appeal Board unless the Licensing Board provided otherwise or unless a stay was issued by the Appeal Board or the Commission pursuant to the Commission's rules of procedure. *Id.*

In response to increased concerns over nuclear plant safety following the Three-Mile Island incident, the Commission revised its regulations as they pertained to the effective date of Licensing Board decisions. Under current regulations, those decisions will not become effective until they are reviewed and explicitly *approved* by the Commission. 10 C.F.R. §§ 2.764(a), (f)(2)(i) (1985). The regulations further provide that unless the Commission otherwise directs, the Commission's decision on immediate effectiveness is without prejudice to any pending appeal on the merits, or to any

subsequent formal adjudication. 10 C.F.R. § 2.764(g) (1985). In short, section 2.764 specifically contemplates Commission approval of a full-power operating license prior to the resolution of appeals or motions associated with ongoing challenges.

In its March 15 decision, the Commission carefully considered whether the issues raised in petitioners' two motions warranted a stay of the Licensing Board's decision authorizing Waterford–3 to operate at full power. As is the case with all immediate effectiveness reviews, the Commission's March 15 decision did not represent an adjudication on the merits. In that decision, the Commission went no further than to determine, in the light of all information in the administrative record (including that provided by petitioners), that a stay of the effectiveness of the Licensing Board's decision was not required by the public interest. In the Commission's words,

> [t]he current record has provided a reasonable basis to conclude that the plant can be operated safely at full power, pending resolution of the issues currently before the Appeal Board and we so find.

CLI–85–3, 21 N.R.C. at 475 (Mar. 15, 1985). We find that conclusion to be well within the Commission's discretion.

■ It is petitioners' implicit position that the regulatory scheme enshrined in section 2.764 is inherently flawed because it permits licensing decisions to become effective prior to a review on the merits. That position is without support. Nothing in the AEA makes resolution of all appeals by an Appeal Board mandatory prior to Commission action on a Licensing Board's initial decision. To the contrary, section 191(a) of the AEA, 42 U.S.C. § 2241(a), vests wide discretion in the Commission to establish "one or more atomic safety and licensing boards ... to conduct such hearings as the Commission may direct and make such intermediate and final decisions as the Commission may authorize...." *Id.*

■ The Commission is thus well within its discretion in providing in 10 C.F.R.

§ 2.764 for immediate effectiveness of Licensing Board initial decisions upon Commission review notwithstanding the pendency of appeals to the Appeal Board, and especially notwithstanding motions to reopen on which the Appeal Board has not yet ruled. We conclude that the section is lawful and that the Commission complied with its requirements.

b. *Mootness of Attack on Immediate Effectiveness*

With regard to petitioners' attack on the propriety of authorizing full-power operations pending final agency action on the motions to reopen, the issue is now moot. As of January 30, 1986, both motions to reopen have been denied.

■ The Appeal Board rejected petitioners' motion to reopen on the basemat cracking issue on April 4, 1985. ALAB-803, 21 N.R.C. at 575 (Apr. 4, 1985). One month later the Commission refused to review the Appeal Board's ruling, thus completing the NRC's administrative process on this issue. Petitioners did not seek judicial review. On July 11, the Appeal Board denied the motion to reopen on the quality assurance and management issues, except with respect to the OI investigation, which it referred to the Commission. ALAB-812, 22 N.R.C. at 58 (July 11, 1985). Finally, on January 30, 1986, the Commission rejected this remaining basis for the motion to reopen and also declined to review the Appeal Board's July 11 decision. CLI-86-1, 23 N.R.C. 1 (Jan. 30, 1986). With the resolution of all pending matters now complete, the issue of whether action should have been taken on these motions prior to the Commission's authorization of full-power operations is moot.

B. *The January 30, 1986 Order Refusing to Reopen the Record*

Petitioners also seek review of the Commission's January 30, 1986 Order dismissing their final motion to reopen the record on the question of management competence and character. The specific issue before the Commission was whether the

pendency of OI investigations into allegations of falsification of records and harassment of quality assurance/quality control personnel at the site demonstrated a lack of management character and competence. CLI-86-1, 23 N.R.C. at 5 (Jan. 30, 1986). The Commission held, *inter alia,* that petitioners' motion "fail[ed] on its face to meet the standards for reopening a closed record." *Id.* at 7. We find no reason to disagree.

As this court noted in *Mobil Oil Corp. v. ICC,* 685 F.2d 624 (D.C.Cir.1982), our role in reviewing denials of motions to reopen the record is a limited one. "Where as here the agency has taken final action on a matter that is peculiarly within its realm of expertise, we will not require the agency to reopen its proceedings except upon a clear showing of abuse of discretion or of extraordinary circumstances." *Id.* at 632.

In examining petitioners' plea to reopen the record, we rely on the same court-sanctioned test applied by the Commission in reaching its decision:

1) whether the motion to reopen is timely;

2) whether the information raises a significant safety (or environmental) concern; and

3) whether the information might have led the Licensing Board to reach a different result.

CLI-86-1, 23 N.R.C. at 4-5; *see San Luis Obispo Mothers for Peace v. NRC,* 751 F.2d 1287, 1318 (D.C.Cir.1984), *vacated in part and rehearing en banc granted on other grounds,* 760 F.2d 1320 (1985), *affirmed,* 789 F.2d 26 (1986) (*"Mothers for Peace"*). On applying the test to petitioners' claim as to the relevance of the ongoing OI investigation, we find that petitioners fail to meet two of the three test requirements.

■ As a primary task of OI is to investigate *possible* violations of NRC requirements, the mere fact of an investigation proves nothing about the matters under scrutiny. We therefore agree with the Commission's assessment that the "materi-

al proferred by [petitioners], *i.e.*, that investigations are under way, certainly is not 'tantamount to evidence,' and is not the type of 'relevant, material, and reliable' new information required to reopen a record." *Id.* at 5–6 (quoting *Pacific Gas and Electric Co.*, 19 N.R.C. 1361, 1366–67 (1984), *aff'd sub nom. Mothers for Peace, supra,* 751 F.2d 1287). Accordingly, we find the Commission did not abuse its discretion in denying petitioners' motion to reopen.

### III. CONCLUSION

The Commission's decision authorizing full-power operation of Waterford–3 pending motions to reopen the record was fully consistent with statutory and regulatory procedures. The Commission's rejection of petitioners' final motion to reopen was supported by reasoned explanation and was not arbitrary, capricious, or an abuse of discretion. The decision of the Commission on both counts is therefore

*Affirmed.*