Wells EDDLEMAN; The Coalition for Alternatives to Shearon Harris; The Conservation Council of North Carolina, Petitioners,

v.

NUCLEAR REGULATORY COMMISSION; United States of America; Carolina Power and Light Company; North Carolina Eastern Municipal Power Agency, Respondents.

No. 87–1018.

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1987.

Decided Aug. 10, 1987.

Robert Epting (Epting & Hackney, John D. Runkle, Wells Eddleman, pro se, on brief), for petitioners.

George Paul Bollwerk, III, Office of the Gen. Counsel, U.S. Nuclear Regulatory Com'n (William C. Parler, Gen. Counsel, William H. Briggs, Jr., Sol., E. Leo Slaggie, Deputy Sol., Edward J. Shawaker, Jr., Asst. Chief, Appellate Section, Land and Natural Resources Div., U.S. Dept. of Justice, Vicki L. Plaut, on brief), Thomas A. Baxter (Delissa A. Ridgway, Wilbert Washington, II, Shaw, Pittman, Potts & Trowbridge, Richard E. Jones, Dale E. Hollar, Carolina Power & Light Co., on brief), for respondents.

Before PHILLIPS, and CHAPMAN, Circuit Judges, and BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

This petition for review concerns the approval by the Nuclear Regulatory Commission of a licensing board's decision to grant the Shearon Harris Nuclear Power Plant a full operating license. The petitioners contend that they were wrongly denied fair notice and a full opportunity to address the Commission at its "immediate effectiveness" review, that they were wrongly denied a full adjudicatory hearing on the merits of their "2.206 petition" alleging various safety defects, and that they were wrongly denied a hearing on their objection to the granting to the power plant of an exemption from the literal requirements of 10 C.F.R. Part 50, Appendix E, requiring a full exercise of the "Emergency Response Plan" within one year prior to operation of the nuclear plant at greater than five percent of the plant's rated power. Finding these exceptions without merit, we affirm the Commission's actions in rendering the licensing decision immediately effective.

Section 185 of the Atomic Energy Act establishes a two-step regulatory procedure for the construction and licensing of nuclear power plants. The first stage entails the issuance of a construction permit to an applicant whose application meets with the Commission's approval; the second involves the issuance of an operating license after the Commission determines that all relevant requirements for the construction and operation of the facilities have been or will be satisfied. 42 U.S.C. § 2235. Before a construction permit can be issued, the licensing board established by the Commission must hold an adjudica-

tory hearing on the application. 42 U.S.C. § 2239; 10 C.F.R. § 2.104(b). Conversely, hearings on operating license applications are held only when an interested person requests one, 42 U.S.C. § 2239(a), 10 C.F.R. § 2.714, or when the Commission *sua sponte* determines that a hearing is required in the public interest. The Commission may, however, issue an operating license without a hearing. 42 U.S.C. § 2239(a).

In order to minimize delays in enabling a completed nuclear power plant to commence operation, operating licensing proceedings are conducted simultaneously with plant construction. Often plant construction is completed by the time the licensing board renders its initial decision authorizing the license, but prior to the completion of the Commission's formal internal review of the licensing board's decision. In order to prevent costly delays following the licensing board's initial approval, the Commission has instituted procedures under which a non-merits determination is made by the Commission as to whether the "operating license shall be effective immediately upon issuance...." 10 C.F.R. § 2.764(a). This determination is without prejudice to a decision on the merits on issues raised in the licensing proceedings, and it is termed an "immediate effectiveness review." This review allows the licensing board's authorization of full-power operation to become effective while the resolution of contested issues continues through the formal, internal appeals process.

■ The Shearon Harris Nuclear Plant had obtained an operating license from the licensing board on October 24, 1986. Although the formal appellate procedure was ongoing, the Commission pursuant to its practice decided to review the licensing board's approval so that the power plant could become immediately effective. The petitioners argue that they were denied adequate notice and an opportunity to present arguments at this January 8, 1987 immediate effectiveness review. The petitioners' position contains the assumption that the full panoply of procedural rights

and protections pertinent to a full adjudicatory hearing attached to this immediate effectiveness review. We find this assumption to be unwarranted. The court in *Oystershell Alliance v. United States Nuclear Regulatory Commission*, 800 F.2d 1201 (D.C.Cir.1986) (per curiam), held that the Commission is within its discretion in providing in 10 C.F.R. § 2.764 for an immediate effectiveness review of licensing board initial decisions through this informal review process parallel to the formal appeal proceedings. We find its reasoning and conclusions persuasive. Because the petitioners had no rights to notice and a hearing under the Commission's immediate effectiveness review process, the appellants' argument is without merit.

■ Next, the petitioners argue that they had a right to a hearing on their 2.206 petition, and that the Commission's resolution of that petition primarily in reliance on the report of the NRC staff investigation was improper. The petitioners had filed, pursuant to 10 C.F.R. § 2.206, a petition which asserted various safety concerns respecting the power plant. Section 2.206 of the Commission's regulations provides a mechanism by which members of the public may request initiation of an enforcement action to modify, suspend, or revoke a license, or for such other action as may be appropriate. It has been held that 2.206 petitioners do not have a right to a hearing because the disposition of these petitions is not a "proceeding" under § 189a of the Atomic Energy Act. *Illinois v. Nuclear Regulatory Commission*, 591 F.2d 12, 14 (7th Cir.1979); *Porter County Chapter of the Izaak Walton League of America, Inc. v. Nuclear Regulatory Commission*, 606 F.2d 1363 (D.C.Cir.1979). We agree with the result in these decisions, and hold that the petitioners have no hearing rights pursuant to their petition under 10 C.F.R. § 2.206.

■ The petitioners also argue that, even assuming that the Commission was correct in resolving the allegations made in the 2.206 petition without a formal hearing, the Commission was in error in examining facts that were not part of the formal

adjudicatory record. It is well-established in case law that the Commission has the right to investigate the substance of a 2.206 petition in order to decide whether the petition raises a substantial health or safety concern justifying an evidentiary hearing. *See Porter County*, 606 F.2d at 1369. In making this preliminary investigation, there seems to be no reason why the Commission should be limited to the adjudicatory record arising from the licensing hearings, for the simple reason that 2.206 petitions can involve matters unrelated to any issues before the licensing board; indeed, such was the case here.[1] The resolution of 2.206 petitions is not part of the licensing procedure, and petitioners' attempt to limit the scope of the investigation to adjudicated facts misperceives the nature of the inquiry. We hold that the Commission was not in error in examining facts outside the formal record.

■ Finally, the petitioners argue that the Commission had an obligation to hold a hearing to resolve the power plant's exemption requests. 10 C.F.R. Part 50, Appendix E, requires that an applicant for a nuclear power plant license shall conduct a full participation exercise of the Emergency Response Plan (ERP) for such plant within one year before the issuance of the first operating license for full power, and prior to operation above five percent of rated power. Shearon Harris, along with local governmental authorities, conducted a full-scale ERP in May of 1985, in anticipation of commencing operation in March, 1986. Due to delays, however, the actual start-up did not occur until one year and seven months after the ERP. It appears that this unanticipated delay is a common problem, and that the Commission typically grants exemptions from the need to re-perform the ERP, particularly where the ERP

was found to be adequate. Shearon Harris duly requested an exemption from the literal necessity of re-performing the ERP exercise.

On April 3, 1986, petitioner Eddleman requested from the Director of the NRC a hearing on the nuclear plant's exemption request. Because both Eddleman and the defendant apparently were in agreement that the exemption request was outside the ongoing licensing proceedings, the NRC staff referred the hearing request to the Commission for appropriate disposition. On September 12, the Commission advised the parties that it had decided to determine whether there were any contentions that would warrant an evidentiary hearing before it addressed the legal question of whether the Atomic Energy Act granted interested persons any hearing rights on an exemption request. The Commission requested briefs on the issue of whether there were any material issues of fact relative to the exemption request.

The Commission utilized 10 C.F.R. § 50.-12 to resolve the exemption request. The Commission concluded that the petitioners had not put forth any litigable contentions or otherwise raised any material issues of fact which would warrant a hearing. Under 10 C.F.R. § 50.12, an exemption may be granted, in part, where there is a "special circumstance" involved. One such special circumstance is that the application of the regulation "is not necessary to achieve the underlying purpose of the rule." 10 C.F.R. § 50.12(a)(2)(ii). The NRC staff found that the May 1985 exercise, which was successful, along with several other indicia attesting to the reliability of the ERP at Shearon Harris, rendered the purpose of the regulation fulfilled. Because the alleged deficiencies had been found unsubstantiated, the hearing request was denied.[2]

---

1. The concerns raised in the 2.206 petition involved "sandbagging," a practice of strengthening the locking force of bolts by sprinkling sand into the threads, and also allegations that certain materials had been substituted for the required materials.

2. The Commission also concluded that the petitioners' allegations about deficiencies in the May 1985 exercise did not raise an issue justify-

ing a hearing, because the ERP standard had already been found satisfied by the NRC staff and by the Federal Emergency Management Authority, and because the alleged deficiencies in the May exercise had already been unsuccessfully challenged by the petitioners before the licensing board and the appeal board. The alleged subsequent defects were found to be unsupported or minor.

**50**

The petitioners raise several issues regarding the Commission's disposition of the exemption request. First, the petitioners state that the Commission utilized the incorrect regulatory provision to determine whether the exemption should be granted. Second, the petitioners argue that the Commission's determination was incorrect on the merits. Third, the petitioners argue that a hearing should have been conducted, or in the alternative, the matter should have been referred to the licensing board for resolution.

Regarding the argument that the Commission used the incorrect regulation, it appears that the Commission in resolving exemption requests can use either § 2.758 or § 50.12. Which provision to apply depends "on the circumstances of each case." The difference between the two appears to be that § 2.758 is directed more toward exemptions related to the subject matter of an ongoing licensing proceeding, while § 50.12 is more general in scope. Regulatory agencies are of course afforded a great deal of discretion in construing their own enabling statutes. We find no error in the Commission's decision on this point.

Regarding the petitioners' argument that the exemption should not have been granted on its merits, we find this contention without substance. The petitioners' arguments primarily concern the merits of the May 1985 ERP and the fact that the ERP took place beyond the one-year limitation. We see no basis in the record to dispute the Commission's judgment as to the adequacy of these safety procedures.

Concerning the lack of a hearing, the petitioners note that the exemption request was granted formally by the Commission in its authorization to the NRC staff to issue a full-power operating license to the power plant, and to include, if appropriate, an exemption from the requirement for an exercise of the ERP within one year prior to commencement of operation. The petitioners argue that this event had the effect of amending the license, and they argue that amendments to the license can not be performed absent a hearing. We find this contention premature, because the Commis-

sion's determination that the complaint did not set forth a contention that could be litigated has the effect of rendering the procedural prerequisites for a § 189(a) formal hearing unmet. We likewise do not find error in the Commission's decision not to refer this matter to the licensing board. The licensing board did not have this issue, or any related issue, before it, and thus no advantage could have been gained by such a referral.

The actions of the Nuclear Regulatory Commission are thus

AFFIRMED.