**NUCLEAR INFORMATION AND RESOURCE SERVICE, et al.,
Petitioners,**

v.

**UNITED STATES NUCLEAR REGULA-
TORY COMMISSION and United
States of America, Respondents,**

**Nuclear Management and Resources
Council, Inc., Intervenor.**

**No. 89–1381.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 26, 1990.

Decided Nov. 2, 1990.

Eric R. Glitzenstein, with whom Dean R. Tousley was on the brief, for petitioners. William B. Schultz, Alan B. Morrison, Diane Curran and James M. Shannon also entered appearances for petitioners.

Steven F. Crockett, Atty., U.S. Nuclear Regulatory Com'n, with whom William C. Parler, Gen. Counsel, John F. Cordes, Jr., Sol., Martin G. Malsch, Deputy Gen. Counsel, and E. Leo Slaggie, Deputy Sol., U.S. Nuclear Regulatory Com'n, Anne S. Almy, Asst. Chief, Appellate Section, Environmental and Natural Resources Div., and Ellen J. Durkee, Atty., U.S. Dept. of Justice, were on the brief, for respondents. John A. Bryson, Atty., U.S. Dept. of Justice, also entered an appearance for respondents.

Barton Z. Cowan, with whom Joseph M. Ramirez, Robert W. Bishop, Marcus A. Rowden and P. David Richardson were on the brief, for intervenor.

Dorothy Thompson was on the brief for amicus curiae urging that the new rule be overturned. Robert Guild also entered an appearance for amicus curiae.

Before WALD, Chief Judge, SENTELLE and THOMAS, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Petitioners seek review of regulations promulgated by the Nuclear Regulatory Commission that substantially revise the licensing procedures for nuclear power plants. In part, the regulations shorten and streamline the licensing process by "frontloading" the required hearings, that is, by increasing the number of issues decided earlier in the process. Petitioners challenge these regulations as contrary to the Commission's authority under §§ 185 and 189(a) of the Atomic Energy Act.

We find that the plain language of § 185 requires the Commission to make a post-construction, pre-operation finding that a nuclear plant will operate in conformity with the Act and that the plain language of § 189(a) requires the Commission to provide an opportunity for a hearing to consider significant new information that comes to light after initial licensing and that implicates the Commission's finding obligations under § 185. Accordingly, we find that two subsections of the regulations are inconsistent with the statute. We thus vacate 10 C.F.R. § 52.103(b) and 10 C.F.R. § 52.103(c); we uphold the remainder of the regulations against petitioners' various challenges.

I. BACKGROUND

Since the enactment of the Atomic Energy Act ("Act"), 42 U.S.C. § 2011 *et seq.*, the Nuclear Regulatory Commission ("NRC" or "Commission") has considered authorization of each aspect of each nuclear power plant separately, on a license-by-license basis. The result, in the words of the Office of Technology Assessment, is that

[e]ssentially every reactor ... has been custom-designed and custom-built. The fact that almost every reactor is 'one-of-a-kind' has led to excessive difficulty in verifying the safety of individual plants and identifying particular problems in transferring the safety lessons from one reactor to another.

Congress of the United States, Office of Technology Assessment, *Nuclear Power Plant Standardization* at 3 (1981) (quoted in Brief of Intervenor ("Int. Br.") at 5). In particular, the construction and licensing of nuclear power facilities has proceeded in a stepwise fashion. First, the Commission issues a construction permit; the Act mandates a public hearing before a construction permit can be issued. 42 U.S.C. §§ 2235, 2239(a); 10 C.F.R. § 2.104(b). That hearing would address, *inter alia,* "the proposed design of the facility," "[w]hether the applicant is technically [and]

financially qualified," and whether *"construction* of the facility will be inimical to the ... health and safety of the public." 10 C.F.R. § 2.104(b) (emphasis supplied); *see also* 10 C.F.R. § 50.35. After construction and upon certain findings, the Commission would issue an operating license; a hearing on an operating license application would be held upon the request of an interested party. 42 U.S.C. § 2239(a), 10 C.F.R. § 2.104(c). At this hearing, the Commission would consider additional issues such as, whether "[c]onstruction of the facility has been ... completed in conformity with the [ ] permit," whether there "is a reasonable assurance [that the plant can be operated] without endangering the health and safety of the public, and ... in compliance with" the Act, and whether emergency plans are adequate. 10 C.F.R. § 2.104(c); 10 C.F.R. § 50.47; *see also* 10 C.F.R. § 50.57. *See also Oystershell Alliance v. NRC,* 800 F.2d 1201, 1204 (D.C.Cir.1986); *Union of Concerned Scientists v. NRC,* 735 F.2d 1437, 1438 (D.C.Cir.1984).

After numerous unsatisfactory attempts to secure passage of legislation reforming the nuclear power plant licensing process,[1] the Commission promulgated, with the required notice and comment period, the regulations at issue in this review, 10 C.F.R. §§ 52.1–.103. 54 Fed.Reg. 15,372 (1989). These regulations (collectively "Part 52") simplify the licensing process and reduce the uncertainties and delays in the current regime in three ways. Subpart A of the regulations provides for "early site permits" for nuclear power plants and allows persons to apply for and secure site permits before applying for a construction permit or "combined license." 10 C.F.R. §§ 52.11–.39. Subpart B establishes procedures for plant design certification by rulemaking, thus facilitating the standardization of large portions of plant design. 10 C.F.R. §§ 52.41–.63. Subpart C—the focus of this litigation—provides for "combined licenses." 10 C.F.R. §§ 52.71–.103.

Under subpart C, the Commission after a public hearing may issue a combined license, or more precisely, a construction permit with a conditional operating license. 10 C.F.R. § 52.97. Upon completion of construction, and upon a finding of conformity with the standards ("acceptance criteria") specified in the combined license, the Commission authorizes plant operation. 10 C.F.R. § 52.103. After construction (and before authorization), an interested party may contest the authorization to operate the plant in two ways. First, the party may file a "good cause petition" which "shows ... that one or more of the acceptance criteria have not been met." 10 C.F.R. § 52.103(b)(1)(i). If the Commission finds that "genuine issues of material fact are raised by the petition" and certain other conditions are met,[2] then the Commission holds a hearing to resolve the issues. Second, the party may file a petition to modify the terms and conditions of the combined license under 10 C.F.R. § 2.206.[3] The "Commission shall consider the petition and determine whether any immediate

---

1. *See, e.g., Nuclear Licensing Reform: Hearing Before the House Subcommittee on Energy and Commerce,* 100th Cong., 2d Sess. (1988); *Nuclear Facility Standardization Act of 1986: Hearing Before the Senate Committee on Energy and Natural Resources,* 99th Cong., 2d Sess. (1986); *Nuclear Regulatory Reform: Hearings Before the Senate Subcommittee on Nuclear Regulation of the Committee on Environment and Public Works,* 99th Cong., 1st Sess. (1985); *NRC Licensing Reform: Hearing Before the House Subcommittee on Energy Conservation and Power of the Committee on Energy and Commerce,* 98th Cong., 1st Sess. (1983); *Nuclear Regulatory Commission Operating License Process: Oversight Hearing Before the House Subcommittee on Energy and the Environment of the Committee on Interior and Insular Affairs,* 97th Cong., 1st Sess. (1981).

2. These conditions include: "that settlement or other informal resolution ... is not possible" and "that the issues ... are not exempt from adjudication under 5 U.S.C. § 554(a)(3)." 10 C.F.R. § 52.103(b)(2)(i).

3. 10 C.F.R. § 2.206 provides in part:
(a) Any person may file a request to institute a proceeding pursuant to § 2.202 to modify, suspend, or revoke a license or for such other action as may be proper....
(b) Within a reasonable time ... the Director of the NRC office with responsibility for the subject matter of the request shall either institute the requested proceeding ... or shall advise [the requesting party otherwise]....
*See also* Part III.A. *infra.*

action is required," 10 C.F.R. § 52.103(b)(2)(ii), but need not hold a hearing upon request.

Subpart C revises the existing licensing process in two significant ways. First, by combining a construction permit and an operating license, the Commission hears and decides more licensing issues earlier in the process. "[I]ssues which in the past have been considered in operating license hearings [are under Part 52] considered at the combined license stage"; subpart C thus "moves the bulk of the issues up front in the licensing process." 54 Fed.Reg. at 15,373–74. For example, the adequacy of emergency plans under 10 C.F.R. § 50.47 and whether "the facility will be ... *operated* in conformity with the ... Act" would be considered at the combined-license stage. 10 C.F.R. § 52.97 (emphasis supplied). Second, subpart C alters the post-construction hearing opportunity. The Commission is required to hold a hearing upon request only with regard to issues concerning the conformity of the plant with the acceptance criteria; other concerns are addressed through the 10 C.F.R. § 2.206 petition process.

Petitioners, interested citizens' groups, challenged subpart C as a violation of the Atomic Energy Act.

## II. The NRC's Authority to Structure Licensing Procedures

■ Petitioners contend that § 185 of the Atomic Energy Act bars the issuance of combined licenses and mandates the stepwise licensing procedures long employed by the Commission. We find the petitioners' reading of the Act overly formal and affirm that the Commission has substantial discretion to reform its licensing procedures. We begin our analysis by examining the Commission's statutory authority to structure those procedures.

In the Atomic Energy Act, Congress granted the Atomic Energy Commission (and its successor, the NRC[4]) substantial latitude in the design of licensing procedures. *See Union of Concerned Scientists*, 735 F.2d at 1446 (the " 'Commission is entitled to great freedom in its efforts to structure its proceedings' " (quoting *Bellotti v. NRC*, 725 F.2d 1380, 1389 (D.C.Cir. 1983) (Wright, J., dissenting)). Section 161(b) (42 U.S.C. § 2201(b)), for example, authorizes the Commission to establish "such standards and instructions [as necessary] to govern the possession and use of special nuclear material" and § 161(h) (42 U.S.C. § 2201(h)) grants the NRC authority to "combine in a single license one or more [regulated] activities."

The petitioners claim that the plain language of § 185 bars the issuance of combined licenses. That section provides, in relevant part, that

All applicants for licenses to construct ... facilities shall ... be initially granted a construction permit.... Upon completion of the construction ..., upon the filing of any additional information needed to bring the original application up to date, and upon finding that the facility authorized has been constructed and will operate in conformity with the application as amended and in conformity with the provisions of this chapter and of the rules and regulations of the Commission, and in the absence of any good cause being shown to the Commission why the granting of a license would not be in accordance with the provisions of this chapter, the Commission shall thereupon issue a license to the applicant.

42 U.S.C. § 2235. Although § 185 does distinguish between construction permits and operating licenses, we find the petitioners' reading of the statute too formal. The essence of the provision is not that construction and operating licenses must be separate permits, but rather that the Commission must make specific findings before authorizing operation.[5]

---

4. In 1974, the AEC was abolished and its licensing functions transferred to the NRC. *See* Pub.L. No. 93–438, 88 Stat. 1233 (1974) (codified at 42 U.S.C. § 5801 *et seq.* (1976)).

5. Moreover, as the Commission notes, § 161(h) appears to provide expressly for this sort of combination of licenses.

The Supreme Court's decision in *Power Reactor Development Co. v. International Union of Electrical, Radio, & Machine Workers,* 367 U.S. 396, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961), is not to the contrary. In *Power Reactor,* the Court considered essentially the reverse claim of that raised here; in that case, the union contended that the Act required the Atomic Energy Commission to make a definitive finding about operational safety before it issued a *construction* permit. Under the procedures in effect at the time (and essentially similar to pre-Part 52 procedures), the Commission considered many operational safety issues at the operating-license stage. The Court upheld the Commission's procedures. Citing the Court's statement that "Congress contemplated a step-by-step procedure," 367 U.S. at 405, 81 S.Ct. at 1533, the petitioners maintain that Part 52 is barred by *Power Reactor.* We, however, read the Supreme Court's decision more narrowly. *Power Reactor* stands not for the proposition that § 185 requires the precise "step-by-step" licensing procedures the Commission employed, but for the proposition that § 185 does not mandate all operational-safety issues to be decided at the pre-construction hearing.

The petitioners also maintain that the failure of Congress to enact reforms [6] similar to those provided by Part 52 evidences congressional intent to preserve the existing licensing process. We find the history of congressional inaction less significant than do the petitioners. Although we recognize that Congress has failed to enact numerous similar proposals for restructuring the licensing process, we do not agree that such inaction indicates that the status quo is congressionally mandated. We recognize that it "may often be shaky business to attribute significance to the inaction of Congress." 367 U.S. at 409, 81 S.Ct. at 1535. In this case, we believe the most plausible reading of the extended legislative scenario is that Congress was rejecting the various proposals before it, rather than memorializing the existing scheme.[7] For all of these reasons, we disagree with the petitioners' claim that § 185 bars combined licenses.

■ As we have often recognized, the NRC has broad discretion to structure and design its licensing procedures. *See, e.g., Carstens v. NRC,* 742 F.2d 1546 (D.C.Cir. 1984). Nonetheless, the Commission's discretion is bounded. For example, § 103 of the Act directs that "no license may be issued [if] issuance of [that] license would be inimical to the common defense and security or to the health and safety of the public." 42 U.S.C. § 2133. The primary boundaries on NRC authority implicated in this case derive from §§ 185 and 189(a) of the Act. Section 185 provides that *"[u]pon completion of [plant] construction,"* and *"upon"* certain filings and findings, "the Commission *shall thereupon* issue a[n operating] license" (emphasis supplied). Thus the plain language of § 185 requires the Commission to make specific findings after construction and before operation.

■ Section 189(a) also limits the Commission's discretion; that section provides in part that the Commission "shall grant a hearing upon ... request" before the "granting ... of any license." 42 U.S.C. § 2239(a)(1).[8] Part 52's post-construction

6. *See* note 1 *supra.*

7. We also find unconvincing arguments that the legislative history of the Atomic Energy Act restricts the NRC to its current licensing procedures. As the petitioners note, only two slim references to the relevant statutory provisions appear in the legislative history. One of these the *Power Reactor* Court has rightly dismissed as "inadvertent." 367 U.S. at 410, 81 S.Ct. at 1536. The other is a colloquy between industry officials and members of Congress. *See Atomic Energy Act of 1954: Hearings on S. 3323 and H.R. 8862 before the Joint Committee on Atomic Energy,* 83rd Cong., 2d Sess. (1954). Again, the

Supreme Court has interpreted this discussion as reaffirming that certain conditions "must be met before an operating license is granted," 367 U.S. at 411, 81 S.Ct. at 1536, not for the broader proposition that existing procedures were mandated.

8. Section 189(a)(1) provides in relevant part:

In any proceeding ... for the granting, suspending, revoking, or amending of any license or construction permit, or application to transfer control ... the Commission shall grant a hearing upon the request of any person whose interest may be affected by the

"authorization to operate" is a "granting of a license" under § 189(a). In order to satisfy § 185, the post-construction "authorization to operate under Part 52" must be, as the NRC recognizes, "equivalent to the 'license' contemplated in section 185." Brief of Respondent ("Resp. Br.") at 28. However, if "authorization" means "license" for the purposes of § 185, then it must mean "license" for the purposes of § 189(a) as well.[9] Therefore, authorization under Part 52 must conform to the hearing-opportunity requirement of § 189(a).

### III. POST-CONSTRUCTION LICENSING AUTHORIZATION UNDER PART 52

The central question before this court, therefore, is whether the post-construction, pre-operation authorization proceedings set forth in Part 52 satisfy the requirements of §§ 185 and 189(a). In assessing whether the new regulations comply with these statutory directives, we consider each of the contested subsections of Part 52 in turn.

#### A. *Section 52.103(b)*

■ Section 189(a) requires a pre-operation hearing on request; and "[w]hen a statute requires a 'hearing' in an adjudicatory matter, such as licensing, the agency must generally provide an opportunity for submission and challenge of evidence as to any and all issues of material fact." *Union of Concerned Scientists*, 735 F.2d at 1444–45 (collecting authorities). Section 185 expressly mandates preoperation findings and thus helps define the scope of the § 189(a) hearing requirements. Section 185 requires four findings relevant to this case:

(a) "that the facility ... has been constructed ... in conformity with the application,"

(b) "that the facility ... will operate in conformity with the application,"

(c) "that the facility ... will operate ... in conformity with the provisions of [the

Act] and of the rules and regulations of the Commission," and

(d) "[that no] good cause be [ ] shown to the Commission why the granting of a license would not be in accordance with" the Act.

42 U.S.C. § 2235.

Part 52 creates a two-track system of pre-operation review. Section 52.-103(b)(2)(i) of Part 52 concerns issues of conformity with the combined license and thus addresses the first two findings required by the plain language of § 185. With regard to these issues, Part 52 provides, with certain reasonable limitations, a hearing upon request. Section 52.-103(b)(2)(ii) provides that all issues other than conformity with the original combined license be treated as "petition[s] to modify the terms and conditions of the combined license." These issues—which include questions of the combined license's conformity with the Act (the latter two § 185 requirements)—are shunted onto a second procedural track. On this second track, interested parties must file petitions in accord with 10 C.F.R. § 2.206. Part 52 provides that "the Commission shall consider the[se] petition[s] and determine whether any immediate action is required." However, neither Part 52 nor § 2.206 provides an opportunity for a hearing in the Commission's consideration of a § 2.206 petition.

Section 52.103(b), therefore, expressly provides a hearing opportunity regarding the plant's conformity with its license, but not regarding the plant's (and license's) conformity *with the Act*—with, for example, § 103's broad proscription of licenses "inimical to ... the health and safety of the public." The Commission argues, however, that the latter issues would have already been heard in the pre-construction, combined-license hearing. Although many issues of a plant's eventual conformity with

---

proceeding.... In cases where such a construction permit has been issued following the holding of such a hearing, the Commission may, *in the absence of a request therefor by any person* ... issue an operating license....
42 U.S.C. § 2239(a)(1) (emphasis supplied).

**9.** As this court noted in *Union of Concerned Scientists,* 735 F.2d at 1442, "section [189(a) ] does not differentiate between the 'authorization' and the 'issuance' of a license for purposes of guaranteeing a hearing on request."

the Act could be heard at the combined-license hearing, some issues cannot—by definition—be heard at that time. During the lengthy construction process, new and safety-significant information about plant design, siting, or operation may arise. These intervening developments may in turn raise new issues about the conformity of the plant with the Act and thus about the propriety of authorization. These developments might involve significant new experiences with the plant design or operation, significant new information about site seismology or meteorology, or significant changes in local population density or infrastructure. Such intervening developments could raise important and previously unconsidered [10] issues about the plant's conformity with the Act. Congress, through §§ 185 and 189(a), required the Commission to make pre-operation findings that the plant would operate in conformity with the Act and to provide a hearing upon request to address material issues related to that finding. Although the Commission retains broad authority to define standards and thresholds for determining when new information raises a material issue of a plant's conformity with the Act, if such information is presented, it must provide a hearing upon request. This is the express mandate of §§ 185 and 189(a).[11]

The congressional mandate of § 103 reaffirms this interpretation of the Act. Without consideration of significant new information that arises before authorization, the NRC cannot ensure that authorization would not "be inimical to the common defense and security or to the health and safety of the public." 42 U.S.C. § 2133.

We recognize that the Commission has broad discretion to shape its own proceedings, but it must exercise that discretion consistent with its statutory mandate. In addressing the issue of new information, the Commission maintains that

> It is true, of course, that at any time new information may appear bearing on whether the design and specifications do in fact assure safety, but any new information would not be a new *issue*. The issue of design adequacy has [already been addressed] and a hearing ... held on this issue.

Resp. Br. at 44 (emphasis in original). The Commission's claim, however, is overbroad. Like the regulations, the NRC's comment suggests that any issue that does not concern conformity with the license need not be heard again. But this disregards the Commission's statutory obligation to ensure that authorization to operate is consistent not only with the acceptance criteria, but also with the Act. Section 52.-103(b) is thus contrary to § 185's requirement of a finding of conformity with the Act and § 189(a)'s requirement of a pre-licensing hearing.

Nor does the availability of § 2.206 petitions meet the requirements of §§ 185 and 189(a) and save Part 52. As this court noted in *Union of Concerned Scientists*, "a request ... under 10 C.F.R. § 2.206 is not a section 189(a) proceeding." 735 F.2d at 1444 (citing *Lorion v. NRC*, 712 F.2d 1472 (D.C.Cir.1983), *rev'd on other grounds sub nom. Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)). Section 2.206 does not provide a hearing on request as § 189(a) requires. Instead, § 2.206 petitions are treated as enforcement actions and may be decided by the Commission without briefing or a hearing.[12] This form

---

**10.** We do not decide at this time the Commission's authority to refuse to consider at the pre-operation stage new information that could have been proffered earlier through any procedural route, including a § 2.206 petition.

**11.** We note that the Commission seems to have recognized this requirement in its *proposed* regulations. 43 Fed.Reg. 32,060 (1988). The forerunner of § 52.103 provided that "any person whose interests may be affected may request a hearing on the basis ... that significant new information shows that some modification to

the site or the design is necessary to assure adequate protection of public health and safety or the common defense or security." 43 Fed. Reg. at 32,077. These proposed regulations would appear to have satisfied the Commission's statutory obligations under §§ 103, 185, and 189(a).

**12.** As the Commission's counsel noted at oral argument, Part 52 provides for "modified 2.206" petitions. The petitions are not forwarded to the director of the appropriate NRC office but to

of collateral attack does not satisfy the Act's requirements. Moreover, the scope of judicial review of denials of such § 2.206 petitions may be limited.[13] Although we need not determine the precise scope of judicial review of denial of the type of petition with which we are concerned (*i.e.*, one based on substantial new information), we note that in several circumstances, including petitions for license revocation based on the inadequacy of quality assurance programs, *Safe Energy Coalition v. NRC*, 866 F.2d 1473 (D.C.Cir.1989), and emergency preparedness plans, *Massachusetts v. NRC*, 878 F.2d 1516 (1st Cir.1989), courts have treated § 2.206 petitions as enforcement actions presumptively unreviewable under *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). As these facts indicate, § 2.206 petitions are insufficient to satisfy the hearing-opportunity requirements of §§ 185 and 189(a).

## B. *Section 52.103(c)*

■ The final subsection of Part 52—§ 52.103(c)—is similarly infirm. That subsection provides that "the Commission shall find that the acceptance criteria in the combined license have been met and that, *accordingly*, the facility has been constructed and will operate in conformity with the Atomic Energy Act." 10 C.F.R. § 52.103(c) (emphasis supplied). Like § 52.103(b), this subsection relies on the premise that conformity with the license's acceptance criteria is equivalent to conformity with the Act.

> the Secretary of the Commission. *Compare* 10 C.F.R. § 52.103(b)(2)(ii) *with* 10 C.F.R. § 2.206. Even so modified, the availability of § 2.206 petitions does not meet the statutory requirements of §§ 185 and 189(a).

**13.** The Supreme Court expressly reserved this question in *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 735 n. 8, 105 S.Ct. 1598, 1602 n. 8, 84 L.Ed.2d 643 (1985).

**14.** Petitioners also challenge subpart C when combined-license applications reference earlier site and design certifications pursuant to subparts A and B. Petitioners argue that, because site and design certifications may be made

As we have demonstrated, however, this assumption is flawed. After issuance of the combined license and before authorization to operate, significant new information may arise that implicates the Commission's ability to find that plant operation will conform to the Act. This is particularly true as subparts A and B of Part 52 are designed to facilitate the licensing of "advanced" and "evolutionary" designs with which the Commission has had little experience. *See* 54 Fed.Reg. at 15,373. Significant new information which surfaces during construction may raise new and material issues of a plant's conformity with the Act.

Thus, § 52.103(c) is contrary to the plain meaning of § 185. Section 185 requires the Commission to make specified findings *after* construction, including a finding that the plant will operate in conformity with the Act. When Congress requires "findings" it means *findings*—not mere inferences. For the Commission to "find" that a plant conforms with the Act simply because it conforms with a license issued years earlier is inadequate; Congress—through the plain language of § 185—expressly intended the Commission to do more than Part 52 provides.[14]

## C. *Severability and Partial Vacation*

As demonstrated above, §§ 52.103(b) and 52.103(c) are inconsistent with the NRC's statutory authority under the Atomic Energy Act.[15] Vacation of these subsections would "create[] a temporary regulatory vacuum." *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506,

> many years in advance, combined licenses under subpart C deprive the public of a right to a hearing on siting and design issues. We believe that the Commission has wide latitude in structuring the scope and timing of its hearings and that conformity with the statute as outlined above should provide an adequate opportunity for airing any significant developments with regard to site or design that arise after initial certification.

**15.** Several sections of Part 52 refer to those subsections we now vacate. *See, e.g.,* §§ 52.39, 52.63. We assume that, in promulgating new regulations, the Commission will make the appropriate revisions to these sections.

545 (D.C.Cir.1983). This situation should not be too troublesome, however, for the time lag between the issuance of a combined license and the initiation of authorization proceedings is more than sufficient for the promulgation of new regulations. Moreover, if the Commission chooses to treat combined-license "authorizations" as it treats traditional operating-license applications, the regulatory vacuum could be filled by the pre-existing (and unamended) regulations for operating-license hearings. *See* 10 C.F.R. § 2.104. In the alternative, the Commission may wish to promulgate new procedural regulations consistent with this opinion.

### CONCLUSION

In responding to the industry's changing knowledge and the public's changing needs, the NRC has promulgated bold and creative new regulations. The Commission's creativity, however, is constrained by its statutory authority. Through the language and structure of the Act, Congress has expressly provided that, when significant new information arises materially affecting the conformity of a pending license with the Act, the Commission must hold a hearing upon request to address that information. Sections 52.103(b) and (c) of Part 52 are inconsistent with this express congressional requirement and must be vacated.

More than thirty-five years ago, Congress enacted the Atomic Energy Act. The provisions of the statute reflect Congress' concern with the magical pace—and attendant hazards—of technological development. As the Supreme Court noted in 1961,

> [N]uclear reactors are fast-developing and fast-changing. What is up to date now may not, probably will not, be as acceptable tomorrow. Problems which seem insuperable now may be solved tomorrow, perhaps in the very process of construction itself.

*Power Reactor*, 367 U.S. at 408, 81 S.Ct. at 1535. On these grounds, the Act requires the Commission always to remain vigilant and to consider significant new information in its licensing proceedings.

The Commission forcefully contends, however, that times have changed, and that over the past four decades understanding of nuclear technology has so evolved as to warrant a reformed regulatory regime. Part 52 is, the Commission maintains, a first step in that direction. Nonetheless, some changes the Commission seeks are so central to the scheme of the Act that they cannot be executed by the Commission or by this court. And although the "statute may be imperfect, [the Commission] has no power to correct flaws it perceives in the statute it is empowered to administer. Its rulemaking power is limited to adopting regulations to carry into effect the will of Congress as expressed in the statute." *Federal Reserve System v. Dimension Financial Corp.*, 474 U.S. 361, 375, 106 S.Ct. 681, 689, 88 L.Ed.2d 691 (1986). Thus, the ultimate responsibility for such reforms as embodied in §§ 52.103(b) and (c) lies not with the Commission, but with the Congress.