**HABITAT EDUCATION CENTER, INC., et al., Plaintiffs,**

v.

**Abigail KIMBELL, Chief, U.S. Forest Service, et al., Defendants.**

Nos. 03–C–1023, 07–C–0254, 08–C–0578, 04–C–0043.

United States District Court, E.D. Wisconsin.

June 5, 2008.

Bradley D. Klein, Howard A. Learner, Kathrine B. Dixon, Environmental Law and Policy Center, Chicago, IL, Brady C. Williamson, Godfrey & Kahn SC, Madison, WI, Sean O. Bosack, Godfrey & Kahn SC, Milwaukee, WI, for Plaintiffs.

Pamela S. West, United States Department of Justice, Washington, DC, for Defendants.

## DECISION AND ORDER

LYNN ADELMAN, District Judge.

In the last several years, plaintiff Habitat Education Center, Inc., a citizen's organization engaged in forest, wildlife, and natural resource protection, some of its members, and other related entities and individuals have brought five separate actions in this District against defendants, the Chief of the United States Forest Service, the Secretary of the United States Department of Agriculture, and other public officials.[1] Plaintiffs have challenged defendants' approvals of timber projects in the Chequamegon–Nicolet National Forest ("CNNF") in northern Wisconsin, contending that defendants approved the projects in violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600–1687, and other statutes. The projects are the "Northwest Howell" (Case No. 03–C–1023), the "Cayuga" (Case No. 03–C–1024), the "McCaslin" (Case No. 04–C–0254), the "Twentymile" (Case No. 07–C–0578), and the "Fishbone" (Case No. 08–C–0043). Plaintiffs now move to consolidate four of the cases pursuant to Fed.R.Civ.P. 42(a) and Civil L.R. 42.1, and alternatively to transfer to me the Twentymile and Fishbone cases, which are presently pending before Chief Judge Randa.

## I. BACKGROUND

### A. Prior Proceedings

In late 2003 and early 2004, plaintiffs filed suits challenging the Northwest Howell, Cayuga, and McCaslin projects, and the suits were randomly assigned to me. I enjoined each project and remanded each case to the Forest Service for further proceedings. See Habitat Educ. Ctr., Inc. v. Bosworth (Habitat III), 381 F.Supp.2d 842 (E.D.Wis.2005) (Cayuga); Habitat Educ. Ctr., Inc. v. Bosworth (Habitat II), 363 F.Supp.2d 1090 (E.D.Wis.2005) (Northwest Howell); Habitat Educ. Ctr., Inc. v. Bosworth (Habitat I), 363 F.Supp.2d 1070 (E.D.Wis.2005) (McCaslin). To provide the necessary background, I will briefly summarize the facts of each case.

### 1. McCaslin

In McCaslin, plaintiffs sued under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, alleging that defendants' purported violations of NEPA and NFMA rendered their approval of the project, which was embodied in a 2003 Record of Decision ("ROD"), arbitrary and capricious. Plaintiffs alleged that defendants violated NEPA because the Environmental Impact Statement ("EIS"),[2] on which the ROD was based, was deficient. Plaintiffs alleged that the EIS was deficient because it: (1) failed to adequately consider the cumulative impacts on the environment of past, present, and reasonably foreseeable future logging projects; and (2) failed to consider sound, high quality scientific information indicating that the McCaslin project would harm goshawk and red-shouldered hawk, species in severe decline. I determined that the EIS was deficient because it insufficiently analyzed the geograph-

---

1. In this decision, I will refer to the parties as "plaintiffs" and "defendants." The parties in the five suits are not identical, but the differences are unimportant for purposes of this decision.

2. An EIS is a detailed written statement that, pursuant to NEPA, federal agencies must prepare before they approve an action that will have a significant effect on the environment. An adequate EIS will demonstrate that the agency took a hard look at the environmental consequences of a proposed action, explain why the agency settled on the particular plan approved, and provide the public with the environmental information needed to participate in the agency's decisionmaking process. See, e.g., Simmons v. U.S. Army Corps of Eng'rs, 120 F.3d 664, 666 (7th Cir.1997).

ic scope of the project's cumulative impacts on the environment and on certain species and rejected the remainder of plaintiffs' NEPA claims. I prohibited defendants from proceeding with the project until they "produce[d] a NEPA compliant EIS." *Habitat I*, 363 F.Supp.2d at 1090. Plaintiffs also alleged that defendants violated NFMA by: (1) approving the project based on an outdated 1986 forest plan; and (2) allowing greater road density in the McCaslin area than the plan permitted. I rejected these claims.

### 2. Northwest Howell

Plaintiffs also challenged the Northwest Howell project under the APA, alleging that defendants violated NEPA and NFMA and that therefore their approval of the project, which was embodied in a 2003 ROD, was arbitrary and capricious. Plaintiffs also asserted a claim under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.* Plaintiffs alleged that defendants violated NEPA because the EIS supporting the ROD was deficient in that it: (1) failed to consider the cumulative impacts on the environment of past, present, and reasonably foreseeable future logging projects; and (2) failed to consider sound, high quality scientific information indicating that the project would harm several species in the CNNF which were already in decline. I determined that the EIS was deficient because it insufficiently analyzed the geographic scope of the project's cumulative impacts on the environment and on the declining species and rejected the remainder of plaintiffs' NEPA claims. I prohibited defendants from proceeding with the Northwest Howell project until they "produce[d] a NEPA compliant EIS." *Habitat II*, 363 F.Supp.2d at 1114. Plaintiffs also alleged that defendants violated NFMA by: (1) approving the project based on an outdated 1986 forest plan; and (2) failing to collect data indicating the effect of the project on management indicator species. I rejected these claims, the former on the merits and the latter because plaintiffs failed to exhaust their administrative remedies. Plaintiffs also alleged that the Forest Service violated the ESA by failing to consult with the U.S. Fish and Wildlife Service ("FWS") regarding the project's effect on the Canada lynx (a "threatened" species) and its habitat. I rejected this claim.

### 3. Cayuga

Plaintiffs also challenged defendants' approval of the Cayuga project, which was embodied in a ROD, by bringing suit under the APA, alleging that the EIS was deficient and that the approval therefore violated NEPA. I agreed and enjoined further action on the project until defendants produced a NEPA compliant EIS. *Habitat III*, 381 F.Supp.2d at 864. Plaintiffs also brought claims under NFMA, which I rejected.

### B. Recent Developments

On January 18, 2007, defendants filed a "Notice of Compliance" in the McCaslin and Northwest Howell cases, indicating that the Forest Service had completed supplemental EISs ("SEISs") addressing the deficiencies I identified.[3] In reliance on the SEISs, defendants issued new RODs reapproving the McCaslin and Northwest Howell projects and now argue that I should lift the injunctions and allow the projects to proceed. Plaintiffs disagree. I will address these disputes in the future.

Since I enjoined the McCaslin, Northwest Howell, and Cayuga projects, defendants have proposed seven additional timber projects in the CNNF. Plaintiffs have filed lawsuits challenging two of them, Twentymile and Fishbone, alleging that the EISs are deficient and that the RODs approving the projects violate NEPA and NFMA. Plaintiffs now seek to consolidate these suits with McCaslin and Northwest Howell, or alternatively to transfer them to me. Because I preside over the lowest-numbered case (Northwest Howell, No. 03–C–1023), I must address plaintiffs' request. Civil L.R. 42.1(a) (E.D.Wis.).

## II. APPLICABLE LEGAL STANDARDS

### A. Consolidation Standards

Federal Rule of Civil Procedure 42(a) (2007) states:

---

**3.** The Cayuga project is apparently still in its administrative phases.

(a) **Consolidation.** If actions before the court involve a common question of law or fact, the court may:

(1) join for hearing or trial any or all matters at issue in the actions;

(2) consolidate the actions; or

(3) issue any other orders to avoid unnecessary cost or delay.

Thus, I may consolidate actions that are "before the court" and "involve a common question of law or fact." *See also Mutual Life v. Hillmon,* 145 U.S. 285, 292, 12 S.Ct. 909, 36 L.Ed. 706 (1892) (stating that consolidating cases "of like nature and relative to the same question" is within trial court's discretion); 8 James Wm. Moore, *Moore's Federal Practice* § 42.10[1][a] (3d ed. 2008) ("The articulated standard for consolidating two or more cases is simply that they involve 'a common question of law or fact.' "). I need not find that common questions of law or fact predominate, only that they exist and that consolidation will prove beneficial. 8 Moore, *supra,* at 42.10[1][a]. I have discretion as to whether to consolidate, *King v. Gen. Elec. Co.,* 960 F.2d 617, 626 (7th Cir.1992), but I may not consolidate unless I find at least one common issue of law or fact. *Enter. Bank v. Saettele,* 21 F.3d 233, 236 (8th Cir.1994); 8 Moore, *supra,* § 42.10[2][c]; 9A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2382 (3d ed.2008). Although neither Rule 42 nor case law defines "common question of law or fact," the plain meaning of this phrase indicates that a common question is one that must be answered identically in each case in which it is presented.

 When common questions of law or fact are present, cases should be consolidated if consolidation will streamline the litigation without causing the parties undue prejudice. *See, e.g., Fleishman v. Prudential–Bache Sec., Inc.,* 103 F.R.D. 623, 624–25 (E.D.Wis. 1984); 9A Wright & Miller, *supra,* § 2383. In determining whether to consolidate, I consider such factors as judicial economy, avoiding delay, and avoiding inconsistent or conflicting results. 8 Moore, *supra,* § 42.10[4][a] (collecting cases). I also consider factors weighing against consolidation, such as the possibility of juror confusion or administrative difficulties. *Id.* § 42.10[5].

## B. Civil Local Rule 3.1(c)

I construe plaintiffs' alternative motion as a request to reassign the Twentymile and Fishbone cases from Chief Judge Randa to me pursuant to this District's local rule governing pending related cases. The rule states:

Where the Civil Cover Sheet indicates a pending related case, the new case must be assigned to the same judge. Factors to be considered in determining whether or not a case is related to another case in this district include whether both cases (i) arise from substantially the same transaction or events; (ii) involve substantially the same parties or property; or (iii) involve the same patent, trademark, or copyright. Civil cases cannot be related to criminal cases. Any dispute regarding whether or not pending cases are related will be resolved by the Judge assigned to the earlier-filed case.

Civil L.R. 3.1(c). In the event that I deny plaintiffs' motion to consolidate, I must determine whether, pursuant to the above rule, I should reassign Twentymile and Fishbone.

## III. DISCUSSION

Applying the above standards to the CNNF cases, I conclude that consolidation is not warranted but that I should reassign the cases currently assigned to Chief Judge Randa to me pursuant to the pending related case rule. With respect to consolidation, I find that although common questions of law or fact exist, consolidation is not appropriate because each of the challenged projects is distinct and should be processed separately. However, because many aspects of the projects will overlap, the efficient administration of justice is best served by one judge handling all four cases.

## A. Consolidation

 In determining whether to consolidate the four cases, I ask first whether they share common questions of law or fact. Usually, two suits under the APA challenging distinct agency actions will not involve common questions of law or fact. This is so

because of the nature of district court review. When a district court reviews an agency action, it performs an appellate function. *See, e.g., Habitat I,* 363 F.Supp.2d at 1075–76 (describing nature of review in APA cases involving NEPA and NFMA claims). The court reviews an agency action based on the administrative record for that action, *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), and may upset the action only if it finds, based on the administrative record, that the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. §§ 706(2)(A), 706(2)(D). Because each action will be based on a different administrative record, challenges to different actions will likely involve different questions of law and fact. Only if the administrative records contain identical facts or present the same legal question will different actions share a common question.

Here, each of the cases plaintiffs seek to consolidate involves a distinct agency action and a distinct administrative record. The agency action is the ROD for each project. *See Highway J Citizens Group v. U.S. Dep't Of Transp.,* 456 F.3d 734, 737 n. 6 (7th Cir.2006). The district court must review each ROD independently based on its own administrative record, which includes its own EIS. The RODs do not necessarily stand or fall together. A district court could find, for example, that it had to set aside the 2006 McCaslin ROD because the SEIS for the project did not comply with NEPA, while simultaneously finding that it should not disturb the Fishbone ROD because its EIS was adequate.

However, having reviewed the administrative records and the briefs, I conclude that the cases present some common questions of law or fact. First, all four cases raise the question of whether defendants should have considered the cumulative impacts of each project throughout the CNNF, instead of focusing on a smaller region within the CNNF. While theoretically there could be different answers to this question depending on the project, in fact the answers will be the

same because the projects' EISs contain nearly identical discussions of the issue and rely on identical environmental data. (*See, e.g.,* Northwest Howell SEIS, App. B at 35–36; McCaslin SEIS, App. B at 32–33; Twentymile FEIS at 3–93; Fishbone FEIS at 3–30.) Second, all four cases raise the question of whether defendants violated NFMA by relying solely on habitat data, rather than actual population counts, in analyzing the projects' effects on the viability of sensitive species. The cases also present the issue of whether the habitat model provides accurate population estimates. Because the answers to these questions will not turn on differences in the projects' administrative records, the answers will be the same in each case.

Having found common questions, I may consolidate the cases if the benefits of doing so outweigh the costs. I conclude that they do not. As explained, a district court must review each project based on its own administrative record. Despite their similarities, the projects are different enough to require independent review. Consolidated briefs and other filings would only complicate this already complex litigation by blurring the distinctions between the projects. Further, the cases are in slightly different procedural postures, and consolidation might delay the projects that are farthest along and might unnecessarily delay an appeal in a particular case. *See Sandwiches, Inc. v. Wendy's Int'l, Inc.,* 822 F.2d 707, 708–10 (7th Cir.1987) (stating that where cases have been consolidated, a judgment in one case that does not cover all claims and parties may not be appealed unless district court makes Rule 54(b) findings); 9A Wright & Miller, *supra,* § 2386 ("Although federal courts usually have said that consolidated actions do not lose their separate identity, some courts have reasoned persuasively that they should be treated as a single action for purposes of review by way of Rule 54(b), and that a judgment in the consolidated case that does not dispose of all claims and all parties is appealable only if certified as that rule requires."). For these reasons, I will deny plaintiffs' motion to consolidate.

## B. Related Case Rule

■ Although I decline to consolidate the CNNF cases, I find that it is in the interest of the efficient administration of justice to reassign the cases currently assigned to Chief Judge Randa to me pursuant to the pending related case rule. The civil cover sheets for both Twentymile and Fishbone list McCaslin and Northwest Howell as related cases, but because the Clerk of Court understood that McCaslin and Northwest Howell were "closed" rather than "pending," he randomly assigned them. However, as explained below, when plaintiffs filed Twentymile and Fishbone, McCaslin and Northwest Howell were pending cases. Further, the four cases are related and should be assigned to the same judge.

First, when plaintiffs filed Twentymile and Fishbone, notwithstanding the Clerk's understanding that McCaslin and Northwest Howell were closed, the parties in those cases were actively seeking further relief in my court. Defendants had moved to lift the injunctions, arguing that they had fully complied with them, and plaintiffs had asked me to continue the injunctions because the SEISs were deficient. Although neither the local rules nor district case law defines "pending," I find that a case is pending when the parties have filed non-frivolous motions requiring judicial action, even if the case happens to be listed as "closed" for housekeeping purposes.[4] *See Webster's Third New International Dictionary* 1669 (1986) (defining "pending" as "not yet decided"). Thus, when plaintiffs filed Twentymile and Fishbone, McCaslin and Northwest Howell were pending.

Second, Twentymile and Fishbone are related to McCaslin and Northwest Howell. The related case rule instructs that "[f]actors to be considered in determining whether or not a case is related to another case in this district include whether both cases (i) arise from substantially the same transaction or events; (ii) involve substantially the same parties or property; or (iii) involve the same patent, trademark, or copyright." Civil L.R.

3.1(c). Importantly, the rule does not limit the factors that a court may consider. In determining whether cases are related, the paramount consideration is whether assigning them to the same district judge will further the efficient administration of justice. *See* Fed.R.Civ.P. 1 (stating that rules of civil procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"); *Old Republic Ins. Co. v. Chuhak & Tecson,* 84 F.3d 998, 1000 (7th Cir.1996) (noting that cases should be assigned to district judges so as to achieve expedition and economy in the judicial process); *United States v. Stone,* 411 F.2d 597, 599 (5th Cir. 1969) ("District Judges have the inherent power to transfer cases from one to another for the expeditious administration of justice."); *Bd. of Sch. Dirs. v. State of Wis.,* 102 F.R.D. 596, 598 (E.D.Wis.1984) ("The purpose of assigning a case to the judge of a pending related case is to foster judicial economy while not fostering judicial specialization."); *United States v. Keane,* 375 F.Supp. 1201, 1204–05 (D.Ill.1974) ("Local regulations are promulgated by district courts primarily to promote efficiency of the court and the court has a large measure of discretion in applying them."). Thus, in applying the related case doctrine, courts should consider whether assigning cases to the same judge would further the efficient administration of justice.

The four cases under consideration are related because, although they do not arise from exactly the same transaction or events, they arise from very similar factual circumstances. While each timber project is different and must be evaluated on its own administrative record, the administrative records of the projects substantially overlap. I have already indicated that the cases share at least two common questions. Additionally, because the cases involve the same forest (the CNNF), the same activity (logging) and the same species (Northern goshawk, Redshouldered hawk, and American pine marten), they are likely to generate other com-

---

4. Most cases listed as "closed" will not be pending within the meaning of the local rule. However, where, as here, the closed case involves ongoing judicial supervision, it is more likely to qualify as a pending case.

mon questions. Common questions should be answered consistently. It would be undesirable for two judges to answer the same questions differently. *Cf. Old Republic Ins. Co.*, 84 F.3d at 999 (discussing unseemly consequences of two district judges reaching opposite results in identical cases). Further, judicial economy is best served by having one judge rather than two address the common questions. Thus, I will order that the Clerk reassign the Twentymile and Fishbone cases to me pursuant to Civil L.R. 3.1(c).[5]

## IV. CONCLUSION

For the reasons stated,

**IT IS THEREFORE ORDERED** that plaintiffs' motion to consolidate is **DENIED** but that their alternative motion to transfer is **GRANTED.** The clerk of court shall reassign case numbers 07–C–0578 and 08–C–0043 to me pursuant to Civil L.R. 3.1(c). Any orders issued by Chief Judge Randa in case numbers 07–C–0578 and 08–C–0043 prior to reassignment, including briefing schedules, shall remain in force until further order of this court.

---

5. Once the present cases are no longer pending, the Clerk should randomly assign any future suits challenging CNNF projects. The purpose of the pending related case rule is "to foster judicial economy while not fostering judicial specialization." *Bd. of Sch. Dirs.*, 102 F.R.D. at 598. Once the present cases are resolved, judicial economy will not require that new CNNF cases be assigned to me, and claim and issue preclusion will minimize the risk of inconsistent results.

